CASE 99.—PETITION BY J. LYMAN BRYAN FOR A WRIT OF
PROHIBITION AGAINST CHARLES W. YUNGBLUT,
JUDGE.—February 18, 1910.

## Bryan v. Yungblut, Judge

Petition filed in the Court of Appeals.—Writ De-
nied.

Elections—Preservation      of  Ballots—Inspection.—An     inspec-
tion of ballots, though demanded by the court for the use
of a grand jury. investigating offenses against the election
laws, is impliedly forbidden by Ky Stat. section 1482, provid-
ing for the preservation of ballots, and prohibiting their in-
spection except in election contests.

AUBREY BARBOUR for plaintiff.

SAM E. ANDERSON for defendant.

OPINION OF THE COURT BY CHIEF JUSTICE NUNN.

On the 15th day of this month the plaintiff, for the
purpose of obtaining a writ of prohibition, filed the
following petition in this court: ''The plaintiff, J.
Lyman Bryan, says that he is and was during the
times hereinafter set out the duly elected, qualified,
and acting county clerk of the county of Campbell
and state of Kentucky; that as said county clerk it
was and is his duty to preserve and keep the ballots
and ballot boxes used during the general election on
the —— of November, 1909; that subsection 13 of
section 1585, Kentucky Statutes (Carroll's Edition,
1909), provides as follows, to wit: 'Any county clerk
who shall knowingly and willfully unlock or break
open and remove or destroy, or in any way tamper
with the ballot boxes and ballots left in his care and

custody, or permit any other person to do so during the period of six months which they are so required to .remain in his office, or until they are removed from his office by order of the court hearing any contest, shall forfeit his office and be deemed guilty of a felony, and upon conviction thereof shall be confined in the penitentiary not less than one nor more than three years.'

"The plaintiff further says that on the 14th day of February, 1910, in the Campbell circuit court of Campbell county, Ky., the defendant, Charles W. Yungblut, who is and was during the said times herein set out the duly elected, qualified, and acting circuit court judge of said circuit court, made and entered an order upon the order book of said court in words and figures as follows, to-wit: 'Upon motion of the commonwealth attorney, and for the purpose of an examination by the grand jury, it being now in session, and demanding same, into election frauds and irregularities alleged to have been committed in Precinct B of the Second ward in the city of Newport at the regular election in November, 1909, it is ordered that the Campbell county clerk be and is hereby directed to deliver to the grand jury of this court the ballots cast in said precinct at said election and the box containing same. C. W. Yungblut, Judge.' A duly certified copy of said order is filed herewith marked 'A.' Plaintiff says that the said defendant has no power or authority to make or enforce the execution of said order; that unless restrained and prohibited by this honorable court the said defendant will by the processes of said circuit court upon the refusal of this plaintiff to comply with said order seek to enforce said order and subject this plaintiff to fine and imprisonment, or, if this

plaintiff complies with said order, he will subject himself to the penalties provided by subsection 13, Sec. 1585, Ky. Stat., and this plaintiff has no adequate remedy by appeal.''

The question is: Did the defendant have the lawful authority to make such an order and has he legal power to enforce it? The presumption is that there were reasonable grounds to believe that some person had committed some crime in connection with the holding of the election last November, and that the ballot box contains some evidence with reference thereto, and the defendant as judge of the court in making the order copied in the petition was making an effort to aid in bringing criminals to justice, which is commendable. Whether he ought to have that power is a question with which this court has nothing to do. The General Assembly enacts the statutes. The Constitution confers upon it alone that power, and the defendant's right to make and enforce such an order depends upon the statutes in force with reference to the subject. The present Constitution brought into existence the secret ballot system of voting, and it appears that the General Assembly which met next after the adoption of it enacted statutes by which it endeavored to make the ballot secret so that vote buyers and intimidators might never be able to ascertain how any person voted at any election, and passed a law to the effect that, when the polls were closed the ballots should be counted, certified, and immediately destroyed.

The law remained this way for a few years, and created some dissatisfaction, because the destruction of the ballots prevented a person voted for at the election from showing by a recount of the ballots that he was elected instead of the person to whom the

certificate was wrongfully delivered. To meet this complaint the General Assembly changed the statutes, and directed that the ballots be retained in the boxes under certain, restrictions for a term of six months at the expiration of which they were to be destroyed. By section 1482, Ky. Stat., the duties of the officers of elections at the various voting precincts after the closing of the polls are specifically defined. It also provides as follows: "And the judge of the election holding the keys to the ballot box and county election seal shall go with and accompany the sheriff of election, within two days thereafter, for which he shall receive the same compensation as the sheriff of election now receives by law for delivering the poll books and election returns to the county court clerk's office, and shall, in the presence of each other, deliver to the county court clerk the ballot box and the poll books, certificates, and the envelopes containing the spoiled, mutilated and questioned ballots, and the keys to the ballot box, together with the county election seal, and the county court clerk shall then and there, in the presence of the said sheriff and judge, unlock the ballot box and ascertain if the package containing the ballots and tally sheet is properly sealed, according to the requirements herein and if it is he shall then issue his receipt in duplicate for said ballot box and ballots, one to the sheriff and one to the judge, which shall be in form as follows, or as near as can be to the facts."

Contained in the form of receipt referred to is the following: "The clerk, after having satisfied himself as to the condition of said ballots, shall again replace said ballots in the ballot box and relock said box in the presence of the judge and sheriff, and then and there deliver to each of them a key to said

box, and the seal of election to the judge who gave it to him, and take their receipt therefor." The section referred to further provides: "The judge and sheriff shall retain said keys for the period of six months, at which time, if there has not been a contest filed, then they shall deliver said keys to the county court clerk, together with the county election seal, and it shall be his duty to destroy said ballots: Provided, however, if there be a contest filed then the judge and sheriff of the different precincts, who hold the keys to the ballot box, of their respective precincts, shall, upon notice of the filing of the contest, deliver the keys to the judge of the court having jurisdiction to try the contest."

It will be observed that the General Assembly in enacting this section of the statutes had the same purpose in view as in the beginning, secrecy of the ballots. It required the ballots to remain in the boxes for a term of six months, and the sheriff and one of the judges of the election to each hold a key and the county court clerk to retain the box for that length of time, at the expiration of which the ballots were to be destroyed, and a penalty was placed upon each of these officers for a failure to perform their duties. It appears to have been the positive purpose of the Legislature that the ballots from the time they were left in the county court clerk's office by the judge and sheriff of the voting precinct should not be seen by any one, except in one instance, and that in a case of a contested election, and then it was expressly provided that the judge and clerk should deliver the keys to the judge of the court trying the contests, and the opening of the ballot box, the inspection and counting of the ballots should be performed under the supervision of the judge of the court trying the contest.

The fact that the General Assembly only provided one instance in which, and one purpose for which, the boxes might be opened, amounts to a prohibition to their being opened in any other instance or for any other purpose. This, in our opinion, is the only rational and reasonable construction that can be placed upon the statutes with reference to this matter. If the county court clerk were to deliver the ballot box to the grand jury, it could not open it without the keys which are in the possession of the sheriff and judge of the election who are by law required to retain them for six months, except in a case of a contest, and then they are required to deliver them to the judge of the court trying the contest. Thus, we see, to accomplish the purpose of defendant it would necessitate compelling three officers to violate the express provisions of the statutes.

We are of the opinion that the defendant judge of the circuit court, under the statutes, has no jurisdiction of the ballot box referred to, and his attempt to inspect or have it inspected is without authority of law, as he can only do this in a case of a contest, which it is conceded does not exist here.

For these reasons, the writ is granted in accordance with the prayer of the petition.

LASSING, J., not sitting.

CARROLL, J., (dissenting). The court has given the statute a strict construction, when it should have been liberally construed. In holding to the letter of the law the spirit has been broken. The ballot box was intended to be a receptacle in which the ballots might be preserved and protected; but the construction converts it into a place in which dishonest election officers may put the evidence of their crimes with the full assurance that it can never be produced against

them.   An inspection of the ballots might furnish conclusive evidence of guilt, and yet this inspection, although demanded by the court for the use of the grand jury that desires to investigate the charge of crime, is denied:

Thus it is that the provision of the statute enjoining the clerk to safely keep the ballots has been made an instrument to protect criminals, and a cloak to shelter crime.   The election officers may now fill the ballot-box with fraudulent ballots, may count for one candidate votes cast for another, or not count them at all; and yet the commonwealth, when it undertakes to prosecute them, is met with the objection that the prosecution must fail because the evidence of the crime is in the ballot box and the law forbids that it be opened.   In my opinion the statute was only intended to prohibit the clerk from permitting any person not authorized by a judicial tribunal invested with power to determine a contest or to investigate offenses against the election laws from removing the box or inspecting the ballots; and it was not contemplated that the circuit court should be denied the right to have the box and ballots brought into court for the purpose of administering the law and punishing offenders against it.