## Miller, County Court Clerk, v. Price, Judge.

(Decided Sept. 27, 1935.)

C. C. GRASSHAM and W. M. HUSBANDS for petitioner.
JOE L. PRICE and HOLLAND G. BRYAN for respondent.

OPINION OF THE COURT BY JUDGE RICHARDSON—Denying writ of prohibition.

This is an original action, under section 110 of the Constitution of Kentucky, by Miss Sarah Miller, as county court clerk of McCracken county, against the Hon. Joe L. Price, as judge of the McCracken circuit court, for a writ of prohibition against the latter.

On the 22d day of August, 1935, following the general primary election held on the 3d day of August throughout the state of Kentucky, for the nomination of party candidates for state offices, the Hon. Holland G. Bryan, commonwealth's attorney of the Second judicial district of Kentucky, including McCracken county,

490

signed and filed in open court a written statement representing to the court that "certain irregularities in the conduct of, and voting at," Clark's River voting precinct in McCracken county, at the August 3d primary, had been committed, and the county court clerk was threatening to destroy the ballots and stubs used at the election in this precinct, and that it was necessary to have them produced for inspection by the grand jury of McCracken county. At the time of the filing of his statement, he entered a motion for an order, directing the county court clerk "not to open, or permit to be opened, except in open court, and under the direction of the judge of the court, either the ballot box used for Democratic ballots, or the one used for Republican ballots," in Clark's River voting precinct, and for an order directing her, immediately, to transfer to the office of the clerk of the McCracken circuit court both the Democratic and the Republican ballot boxes used at the primary election in the precinct. The motion was sustained and an order accordingly entered of record. The order was served by the officer delivering her a copy. The order contains directions to the county court clerk, not necessary to be recited here. Later, the commonwealth's attorney entered a motion in open court for a subpœna duces tecum for Miss Sarah Miller as county court clerk to appear on September 24, 1935, before the grand jury of McCracken county, and to produce the ballots, stub books, and ballot boxes of the Clark's River voting precinct for both the Democratic and Republican Parties at the August 3d primary. The motion was sustained and the subpœna ordered to be issued and was issued and served on the county court clerk.

Miss Miller as county court clerk under the statutes was the custodian of the ballot boxes containing the ballots and stub books referred to in the court's order and subpœna duces tecum. Conceiving it to be her duty to keep in her exclusive possession, and intact, the ballots, ballot boxes, keys, stubs of ballots, canceled ballots, and all other election paraphernalia returned to her office by the precinct's election officers, under sections 1482, 1585a-2, 1550-25 and 1483, Kentucky Statutes, until she destroyed the ballots, she declined to obey either the order of the court or the subpœna duces tecum. She is here insistng that these sections of the statute authorize and justify her disregard of the order

disobedience of the subpœna duces tecum, as well as deprive the circuit court of McCracken county of the jurisdiction, either to enforce its order or compel her compliance with the subpœna duces tecum.

Her insistence is that the first order of the court was entered without notice and it is, therefore, void and unenforceable.

It is true that as early as 1802, this court stated the rule that a fine for a contempt will not be sustained by this court unless the record shows that the contempt was committed in the presence of the court or that the defendant was present in court when the fine was imposed or that a notice, a summons, or an attachment, or a rule to answer the chrge had been served upon him. Henry Clay v. Quarter Sessions Court of Fayette County, 2 Ky. (Sneed Ky. Dec.) 189.

The manner of conducting such proceeding was established by the rule of the common law, and has been followed by the courts of this country, which recognized a procedure based on notice to, summons, attachments, or a rule against, the party, to appear and answer in court.

"The rule of the common law has been modified by giving to the party charged the right to a trial by jury. * * *

"This change was for the protection of the citizen, and instead of restricting his rights under the laws or constitution of his country, is an attempt to place him beyond the exercise of a power that could otherwise inflict punishment at discretion." Arnold v. Commonwealth, 80 Ky. 300, 44 Am. Rep. 480.

It is true that in the pending case, the order of the court involved was entered without notice, summons, attachment, or rule. Plainly, up to this point in the procedure, the court was without jurisdiction to impose punishment for her failure to comply with the order. The serving of the order upon her was a compliance with the accepted rule of practice in such proceeding, and on its return executed on her, the court's jurisdiction thereafter was plenary to hear and determine the matter according to the law.

22 C. J., at section 1187, p. 958, states this rule:

"Whenever it is made clearly to appear in a proper manner that their production [records and documents] is necessary and material for the support of either a cause of action or defense, or the promotion of public justice, the power should be exercised" by the court.

Section 528, Civil Code of Practice, defines a "subpœna duces tecum." Section 105, Criminal Code of Practice, authorizes a county or commonwealth's attorney, when the court is in vacation, to have the circuit court clerk to issue subpœnas for witnesses to appear before the next session of the grand jury. Section 152, Criminal Code of Practice, authorizes the court, by its order and process, to "compel the production of any written document, or of any other thing which may be necessary or proper to be produced or exhibited as evidence * * * and may punish a disobedience of its orders or process, as in cases of witnesses refusing to testify." These Code provisions apply whether the grand jury is or is not in session. The issuance of process for witnesses to appear before the grand jury, at the instigation of the county or commonwealth's attorney, whether upon or without an order of court, is the initial step, in the commencement of a criminal prosecution by an indictment of the grand jury. The procuring of such process or the causing same to be issued is within the authority of these Code provisions.

The county clerk herein invokes the sections of the statutes, supra, and our construction of section 1482 in Bryan v. Yungblut, 136 Ky. 810, 125 S. W. 251, 252, as a complete and perfect justification of her disregard of the first order of the court, though admitting it had been served upon her, and her disobedience of the subpœna duces tecum which also had been served upon, and a deprivation of the jurisdiction of the circuit court to enter the order or to direct the issuance of the subpœna duces tecum and the enforcement of any rule against her for a noncompliance with the order and a disobedience of the subpœna duces tecum, after the service of both upon her.

It is the insistence of the judge of the McCracken circuit court that "section 1482 no longer provides for the destruction of the ballots." He argues that "it is

positively silent on that question; nor does section 1585a-2 provide anything about the destruction of the ballots. * * * the destruction of the ballots is a small portion of section 1550-25. * * * by an act of 1930 [chapter 49], considering the duties of the county clerk relative to ballots and boxes, practically the entire section of 1550-25 has been repealed, if not directly, at least by implication * * *. Section 1550-25 contains the following 'except that said ballot boxes shall be opened by the county court clerk and the returns therein destroyed within ten [10] days before the preceding November election.' "

In Grieb, County Court Clerk, v. Jefferson County Fiscal Court et al., 259 Ky. 171, 82 S. W. (2d) 304, 306, we construed these sections of the statutes as they appertain to the primary election held August 3, 1935. Therein it was our conclusion that:

"Section 1482 of the Kentucky Statutes as now constituted makes no reference as to the period of time after the general election when the county clerk may open the ballot boxes used at the preceding November election, and destroy the ballots contained therein, the court is of the opinion that the re-enactment of section 1482, at the 1932 Session [chapter 83], intended to, and did repeal so much of section 1482 * * * as required the county clerk to wait six months before opening said ballot boxes, and destroying the ballots contained therein."

Continuing, we said:

"It is considered * * * that in general elections, August primary elections, and September second primary elections, if no contest is filed in any race against any candidate within the time limit as provided by law, the county court clerk is authorized, empowered, and directed to open the ballot boxes used at the preceding general election, primary or 'run-off primary,' and to remove and destroy the ballots contained therein. In the event a contest is filed against any candidate in the general election, August primary or 'run-off primary,' then the court in which the said contest is filed and pending will make proper orders for the preservation of said ballots."

The decisive question involved in the present case was neither presented nor determined in the Grieb Case.

In Bryan v. Yungblut, supra, the circuit court endeavored, by its orders, to require the county court clerk, during the period of six months next following the return of the ballots to his office, as provided for by section 1482, to deliver the "poll books, certificates, and the envelopes containing the spoiled, mutilated and questioned ballots, and the keys to the ballot box," in a designated precinct, for an examination by the grand jury, it then being in session, and demanding the same for the purpose of inquiring into and investigating election frauds and irregularities, alleged to have been committed in this precinct. Our construction of the statute was:

"It required the ballots to remain in the boxes for a term of six months, and the sheriff and one of the judges of the election to each hold a key and the county court clerk to retain the box for that length of time, at the expiration of which the ballots were to be destroyed, and a penalty was placed upon each of these officers for a failure to perform their duties," "except in one instance, and that in a case of a contested election."

It was our conclusion on the facts presented therein that the "circuit court, under the statutes, has no jurisdiction of the ballot box referred to, and his attempt to inspect or have it inspected is without authority of law," as he may only do this in case of a contest, which it was conceded, did not exist. In obedience to our conclusion, a writ of prohibition was granted in accordance with the prayer of the opinion.

A statute is to be construed and applied to the proven facts in each particular case. It will be observed that in the Bryan-Yungblut Case, the circuit court was proceeding to compel the county clerk to surrender to the grand jury, for their examination as evidence, the ballots and ballot boxes, within the inhibited period of six months. In view of our opinion in the Grieb Case, the day on which the order was executed upon her, and the 24th day of September, the date fixed in the subpœna for the surrender by the county clerk to the grand jury, the stub books, ballots, and ballot

boxes in question were not within the statutory, inhibited period. This fact plainly distinguishes this case from the Bryan-Yungblut Case.

The question now to be determined was neither considered nor determined in Bryan v. Yungblut.

The intendment and purpose of the sections of the statute, supra, is to make assured honest election returns, and not to afford legally sealed receptacles in which dishonest election officers or illegal voters may put the evidence of their crime, with the law's full assurance that it can never be produced against them. In this case, an inspection of the ballots by the grand jury may furnish conclusive evidence of guilt. The statutes' requirement of the clerk to keep under lock and key, intact, the ballots and ballot boxes, for the period of time required by the sections of the statutes, as they were construed in the Grieb Case, cannot be construed as continuing after the expiration of the time the statutes require her so to keep them. At the expiration of such time her only duty is to destroy the ballots and stub books, which is not inconsistent with the exercise of the power of the court to have the custodian to produce the ballots and the ballot boxes to the grand jury as sought herein. The sections of the statutes, supra, are not susceptible of the construction that they forbid or prevent the court from exercising such power after the expiration of the period of time only during which the county clerk is, by them, required safely to keep in her custody the ballots locked in the ballot boxes, etc.; nor does the case of Bryan v. Yungblut so hold. And there being no other statute providing otherwise, it is our conclusion that, after entering the order involved and its return to the court showing it had been executed upon her and after the issuance of the subpoena duces tecum and its service upon her, on the facts presented, the circuit court had jurisdiction to require her, officially, to produce the stub books, ballots, and ballot boxes to the grand jury, on the 24th day of September, 1935, for its inspection and examination in the exercise of its discretion, and it was the duty of the clerk so to do, subject to the further orders of the court, recognizing, regarding, and protecting the official right and duty still upon her to destroy the ballots.

Other questions are debated in briefs of counsel, but entertaining the views we have expressed, we do not

consider it incumbent upon us to discuss them in this opinion.

For the reasons indicated, the motion for a writ of prohibition is denied and the petition dismissed.

The whole court sitting.