OKLAHOMA TAX COMMISSION et al. v. CLENDINNING, Dist. Judge.

No. 31647. Nov. 16, 1943.

*143 P. 2d 143.*

E. L. Mitchell and C. W. King, both of Oklahoma City, for Oklahoma Tax Commission.

Randell S. Cobb, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., for petitioner.

Dixie Gilmer, County Atty., and M. S. Sims and William M. Taylor, Assts. County Atty., all of Tulsa, for respondent.

OSBORN, J. The Oklahoma Tax Commission has filed this proceeding in this court for a writ of prohibition to prevent the district court of Tulsa county from enforcing an order directing the production by the Tax Commission of income tax returns of some 50 citizens of Oklahoma, residents of some 25 or more counties of the state, for inspection by and exhibition before a grand jury in session in said county. Subpoena duces tecum was served on the Honorable J. Frank Martin, Chairman of said Tax Commission, directing him to produce said returns, and upon his refusal to produce and exhibit same he was adjudged guilty of contempt of court, but the court deferred sentence for said alleged contempt pending application to this court for a determination of the right to require such production for such purposes. This application was therefore filed and this court assumed original jurisdiction.

This is not a proceeding by any of the persons whose income tax returns are sought to be exhibited, and none of them is a party hereto. The Tax Commission, as a public body, asserts that by a specific legislative provision said returns are "confidential and privileged," except as to specific persons and except for specific purposes and in a specific manner, and the Legislature provided that a wrongful disclosure by them of said tax returns would subject them to a criminal prosecution punishable by fine not exceeding $1,000 or by imprisonment in the county jail for a term not exceeding one year, or by both such fine and imprisonment, as well as removal or dismissal from office. Attended with such serious consequences it would seem therefore that the public officials constituting the Tax Commission should proceed with the greatest caution in disclosing said returns in consonance with the legislative declaration as to their confidential and privileged character.

This court in this proceeding is in no wise concerned judicially as to the contents of said returns, but the sole question for determination is whether the production thereof for inspection and exhibition before the grand jury can be required. On the other hand, the county attorney of Tulsa county, representing the respondent district judge, asserts the right to said production, and therefore the validity of the order of the court, and is insisting upon the punishment of the chairman of the Tax Commission for contempt.

As preliminary to the consideration of the determinative question, let us examine the power and duties of a grand jury.

By 22 O. S. 1941 § 311, it is provided:

"A grand jury is a body of men consisting of twelve jurors impaneled and sworn to inquire into and true presentment make of all public offenses against the State *committed or triable within the county* for which the court is holden."

Section 331, Id., provides:

"The grand jury has power to inquire into all ·public offenses *committed or triable in the county* or subdivision, and to present them to the court, by indictment or accusation in writing."

Section 324, Id., provides, in part:

" . . . You, as foreman of this grand jury, shall diligently inquire into, and true presentment make, of all public offenses against this State, *committed or triable within this county* (or subdivisions), of which you shall have or can obtain legal evidence. . . ."

By specific statutory enactment it seems clear that the power and authority of a grand jury is to investigate only crimes committed or triable within its county. While a grand jury has wide powers of investigation and indictment, definite limits have been placed thereon. It may not concern itself with investigation and indictment for offenses occurring wholly outside of the county wherein it is impaneled. Such functions are delegated by other provisions of the

Constitution and statutes to the county attorney of such other county or to a grand jury duly impaneled therein. A grand jury is an arm of the court impaneling it and is, in some respects, subject to its supervisory action. Burke v. Territory, 2 Okla. 499, 37 P. 829. See, also, annotation in 22 A. L. R. 1361 and 106 A. L. R. 1384. It is not contended by the county attorney herein that the grand jury is empowered to investigate crimes not committed or triable within the county, but he contends that it is for the grand jury to say in the first instance whether or not a violation of the law has occurred, and if so, whether or not it was committed within the county or whether or not it is triable in said county.

In this connection it is alleged by the Tax Commission, and duly verified, and not denied by respondent, that none of the named citizens resides in Tulsa county or has any place of business in said county, and none of said returns was verified in said county. It is at once apparent, therefore, that the grand jury cannot concern itself with a violation of the income tax laws by said citizens unless the statutory provisions give such authority. We therefore set out the pertinent statutes:

68 O. S. 1941 § 1486 provides that exclusive venue is in the county court of the county of the taxpayer's residence for failure to file return, and is as follows:

"Any taxpayer who, with intent to defraud the State or evade the payment of any tax, fee, penalty or interest which shall be due pursuant to the provisions of this Act, or of any State tax law, shall fail or refuse to file any report or return required to be filed pursuant to the provisions of any State tax law, or shall fail or refuse to furnish a supplemental return or other data required by the Tax Commission, shall be guilty of a misdemeanor and, upon conviction, shall be punished by a fine of not exceeding One Thousand Dollars ($1,000-.00) for each offense.

"The venue for presecutions arising under this Section shall be in the county court of any county in which such person resides or, if such person is not a resident of this State, any county in which such person does business or maintains an established place of business."

For false or fraudulent return the exclusive venue is in the county court of the county where the return was verified, as provided by 68 O. S. 1941 § 1487, as follows:

"Any person required to make, render, sign or verify any report, return, statement, claim, application, or other instrument, under the provisions of this Act or of any State tax law who, with intent to defeat or evade the assessment or levy of the tax, shall make a false or fraudulent return, statement, report, claim, invoice, application, or other instrument, or any person who shall aid or abet another in filing with the Tax Commission such a false or fraudulent report or statement, shall be guilty of a misdemeanor and shall, upon conviction, be fined not more than One Thousand Dollars ($1,000.00); or shall be imprisoned in the county jail not exceeding one (1) year; or shall be punished by both such fine and imprisonment.

"The venue of prosecutions arising under this Section shall be in the county court of any county where such return or report was verified."

For false book entries or failure to make required entries, the exclusive venue is in the county court of the county of the taxpayer's residence, as provided by 68 O. S. 1941 § 1488, as follows:

"Any person whether acting for himself or for any other person who wilfully makes any false entry or who fails to make any entry which it is his duty to make in any book, ledger or account required by this Act or any State tax law to be kept, shall be guilty of a misdemeanor and, upon conviction therefor, shall be fined in a sum not more than One Thousand Dollars ($1,-000.00); or shall be sentenced to jail for a term not exceeding one (1) year, or both.

"The venue of all prosecutions arising under this Section shall be in the county court of the county in which

such person resides, or if such person is not a resident of this State, any county in which such person does business or maintains an established place of business."

It may be that as to prosecution for false or fraudulent returns filed before effective date of the quoted act in 1939, there was also venue in Oklahoma county, where all returns are filed with the Tax Commission, if any such prosecution had been instituted within the applicable limitation period. But further inquiry into that point is not necessary, since it is not here sought to use any of these returns in any prosecution in Oklahoma county for violation of any income tax law.

With these specific provisions relating to crimes and prosecutions growing out of a violation of said act, we now quote in full section 1454 of the Uniform State Tax Procedure Act, 68 O. S. 1941:

"The records and files of the Tax Commission concerning the administration of this act, or of any State Tax Law, shall be considered *confidential and privileged,* and neither the Tax Commission nor any employee engaged in the administration thereof or charged with the custody of any such records or files, nor any person who may have secured information therefrom, shall divulge or disclose any information obtained from the said records or files or from any examination or inspection of the premises or property of any person.

"Neither the Tax Commission nor any employee engaged in such administration or charged with the custody of any such records or files *shall be required by any court* of this State to produce any of them for the inspection of any person or *for use in any action or proceeding* except when the records or files or the facts shown thereby are *directly involved in an action or proceeding under the provisions* of this Act, or of the State tax law affected, or when the determination of the action or proceeding will affect the validity or the amount of the claim of the State under any State tax law, or when the information contained therein *constitutes evidence of the violation of this Act,* or any state

tax law. Nothing herein contained shall be construed to prevent:

"(a) The delivery to a taxpayer or his duly authorized representative, of a copy of any report or any other paper filed by him pursuant to the provisions of this act, or of any State tax law;

"(b) The publication of statistics so classified as to prevent the identification of a particular report and the items thereof;

"(c) The examination of such records and files by the State Examiner and Inspector, or his duly authorized agents;

"(d) The disclosing of information or evidence to the Attorney General or any county attorney when such information or evidence *is to be used by such officials to prosecute violations of the criminal provisions* of any state tax law or of this act.

"(e) The use by any division of the Tax Commission of any information or evidence in the possession of or contained in any report or return filed with any other division of the Tax Commission.

"(f) The furnishing, at the discretion of the Tax Commission, of any information disclosed by said records or files to any official person or body of any other state or of the United States, who shall be concerned with the administration of any similar tax in that state or the United States.

"*Any violation of the provisions of this Section shall constitute a misdemeanor, and upon conviction, shall be punishable by a fine not exceeding One Thousand Dollars ($1,000.00) or by imprisonment in the county jail for a term not exceeding one year, or by both such fine and imprisonment; and the offender shall be removed or dismissed from office.*"

Thus the statute makes it definite and certain that income tax returns are and "shall be considered confidential and privileged." And that the Tax Commission, under severe penalty, cannot exhibit a tax return or disclose the contents of such a return to anyone except in the manner provided or authorized by law. That statute also makes it definite and certain that the Tax Commission shall not "be required by any court

of this state" to produce such tax returns for inspection except in an authorized proceeding, and the statute above quoted points out the character of proceedings in which such tax returns may be used, and definitely excludes all others.

No one questions the power of the Legislature to so give tax returns this confidential and privileged status. Similar provisions are applied to income tax returns in the various states, and to federal income returns, and to various other reports and returns to the Federal Internal Revenue Department. It is not pointed out where any authority has ever denied the power to so provide. The meaning of our statute above quoted is unequivocal and it needs no construction. It means what it says and must be followed by all, including this court and the respondent district judge. This act constitutes the state's compact and pledge to the taxpayer that his tax return shall be kept inviolate, confidential and privileged, and not disclosed to anyone, nor in any manner, except as specifically authorized by the act itself, and will be used only for the purposes specifically provided. The Legislature is in complete control as to the wisdom of the act. Our duty is but to follow it and apply it. We are not at liberty to minimize the declared public policy evinced by these express provisions of the act making the information contained in said returns confidential and privileged. It was specifically intended by the Legislature that the approximately 200,000 annual income tax returns of the taxpayers would be immune to indiscriminate inspections by officials of each of the 77 counties of the state. The manifest purpose of the act was to collect the taxes accruing to the state, and to that end it sought to induce the taxpayer to make the fullest measure of disclosure of his income and the sources thereof, whether arising from honest toil and labor, or from sources of questionable legitimacy.

It would seem that this act, which is so comprehensive, would alone furnish ample guide to the conclusion that these tax returns are confidential and privileged from the use and disclosure here considered. But the Attorney General has furnished citation of authorities in point from other jurisdictions.

In Ex parte Sackett, 74 Fed. 2d 922, the petitioner, a special agent of the Department of Justice, was in possession of certain copies of correspondence and contracts and other private documents of a citizen which he had made or obtained in connection with an investigation for a prosecution for violation of the Sherman Anti-Trust Law. In litigation between the citizen and another, and on account of destruction of the original records of the citizen, it was sought by subpoena duces tecum to obtain and use the copies held by petitioner. By a rule of the Department the documents were regarded as confidential and privileged from such use. For that reason petitioner refused to produce such copies and was committed to the United States Marshal for contempt. Upon habeas corpus he was released, it being said that the rule of the Department of Justice had the force and effect of law, and considering the documents confidential and privileged in law, their production could not be so compelled.

In the case of In re Valecia Condensed Milk Co., 240 Fed. 310, the holding was stated as follows in the headnotes:

"(1) The Federal and State Governments have power to provide that returns made to their officers to be used in assessing and collecting revenue and taxes shall not be revealed by the officers, and such provisions protect the officers against commitment for contempt for refusal to produce such returns on subpoena by a court.

"(2) In St. Wis. 1915, Sec. 1087m24, providing that no commissioner, clerk, or agent shall divulge in any manner, except as provided by law, any information obtained in the discharge of his official duties, or permit any income return to be seen or examined, except as provided by law, the exception does not permit the production of papers whenever required through the processes of law, which would deny their inspection

only by those whose motives were idle curiosity, and would violate the plain public policy of the statute to protect such returns, in order that they may be freely made, but the exception refers only to the production of papers before other bodies or in other proceedings relating to the assessment of the tax.

"(3) Bankr. Act July 1, 1898, c. 541, 30 Stat. 544, does not require the rules of evidence in proceedings thereunder to be different from such as generally prevail, and does not deprive a witness of his privilege under a state statute to withhold income tax returns by the bankrupt."

And in the body of that opinion it was said:

"In re Weeks (D.C.) 82 Fed. 729, was a proceeding by habeas corpus in the district court to obtain the discharge of a collector of internal revenue from commitment for contempt of the state court, for refusing to obey a subpoena requiring him to produce in that court certain records of his office. The refusal to produce was justified by one of the letters above referred to wherein the Commissioner of Internal Revenue had instructed him not to produce papers or give information concerning matters in his office. The court held that such evidence was in control of the federal government, and that the instruction to the collector by his superior officer protected him in his refusal and he was ordered discharged.

"In re Huttman (D.C.) 70 Fed. 699, the circumstances were similar to those in the Weeks case. The petitioner for habeas corpus there stated that he had been instructed by the head of his department to decline to make the requested revelation of facts which came to him in his official capacity as collector of internal revenue. The fact of such instruction was uncontroverted. The petitioner there, who stood committed by the state court for his refusal to make such revelation, was discharged."

In Boske v. Comingore, 177 U. S. 459, 40 L. Ed. 846, the Supreme Court of the United States held:

"Regulations of the Treasury Department prohibiting a collector of internal revenue from producing records in his office, or copies thereof, in a state court, are within the power conferred upon the Secretary of the Treasury by U. S. Rev. Stat. Sec. 161; and therefore an attempt of a state court to punish him for obeying such regulations will be in violation of his rights under the Constitution and laws of the United States, against which he will be protected by the Federal courts."

And in the body of the opinion it was said:

"The papers in question, copies of which were sought from the appellee, were the property of the United States, and were in his official custody under a regulation forbidding him to permit their use except for purposes relating to the collection of the revenues of the United States. Reasons of public policy may well have suggested the necessity, in the interest of the government, of not allowing access to the records in the offices of collectors of internal revenue, except as might be directed by the Secretary of the Treasury. The interests of persons compelled, under the revenue laws, to furnish information as to their private business affairs would often be seriously affected if the disclosures so made were not properly guarded. . . ."

It is asserted, however, by the county attorney that subsection (d), above quoted, constitutes an exception to the confidential and privileged character of the returns in so far as the county attorney is concerned. Since it is shown herein without contradiction and without further contention to the contrary that these named citizens did not reside or verify their returns in that county, it follows that they could not be prosecuted in that county and that the county attorney has not brought himself within the exceptions to the confidential and privileged character of said returns as provided by said legislative act. It does not appear that such information or evidence could be "used by such official to prosecute violation of the criminal provisions" of such act.

We therefore conclude that the income tax returns here involved were

confidential and privileged; that the Tax Commission was not authorized to disclose their contents to the county attorney or the grand jury above mentioned; that the grand jury was without authority to examine or investigate such returns for any purpose in the proper scope of its duties; that the court order in reference to production of such returns by the Tax Commission was beyond the authority and jurisdiction of the trial judge by reason of specific statutory provisions, and was an unauthorized application of judicial power; and that respondent should be prohibited by this court from further proceeding in that regard.

In justice to the respondent district judge, we should note that he has made clear in the record the circumstances under which he made the order. At a subsequent hearing before him these statements were made a part of the record:

"The Court: . . . I want the record to show this, as far as the order being originally made, the county attorney came before me, with the application of the grand jury as the order shows, and I understood it had all been presented to the Tax Commission and agreed upon—"

—and later in the same record the following:

"The Court:—so you gentlemen will understand it at this time, at the time I made the original order, I was making an order which I was informed was suggested by the Tax Commission."

As we have seen, however, our statutes, within the power of the Legislature, have made such provision as would prohibit and prevent the Tax Commission from agreeing to this improper exhibition and disclosure of the contents of individual income tax returns, and would severely punish and remove from office any member of the Tax Commission who so acted.

While it is not involved in this action, we of course hold that a citizen's income tax return may be freely and fully used in the administration or enforcement of the income tax law as to him or in a proper prosecution for any violation of the income tax law which he had committed.

In the brief filed herein in behalf of the defendant, it is not disputed that the rule is that individual income tax returns may only be used in a prosecution of the taxpayer for violation of the income tax law. There is reasserted the right of the county attorney to inspect tax returns, with a view to an investigation for such a prosecution. But, as we have found, that can have no application to an inspection of these returns, by reason of complete lack of venue as above set out, whatever merit such a contention might otherwise have in a case where venue to prosecute would exist.

The Attorney General presents the question whether the Legislature intended to lodge in the Tax Commission the authority and duty of being concerned with or instituting prosecutions for violations of the income tax law by reason of the provisions of the statutes as to general duties of the commission. That question only arises here incidentally, if it arises at all, and it is not necessary that we discuss or determine the question, since our former stated conclusions fully dispose of the questions directly involved here.

Final briefs herein indicate the possibility that one of the 50 named citizens may have resided in Tulsa county or had some place of business therein. If the county attorney contends that said taxpayer did so reside or engage in business, and wishes to predicate thereon a right to see that particular return, we will hear him further on the particular point.

For the reasons stated, prohibition is granted against any further effort to require the Tax Commission to exhibit, or produce for examination, the income tax returns here involved, with like prohibition against any further proceedings against the Tax Commission, as in contempt, for failure to produce said returns.

278

CORN, C.J., GIBSON, V.C.J., and BAYLESS, WELCH, HURST, and DAVISON, JJ., concur. RILEY and ARNOLD, JJ., dissent.

RILEY, J. (dissenting). By decision of the majority, a writ of prohibition will issue out of this court to suppress evidence sought to be adduced before a grand jury in Tulsa county for the determination of whether there are any violations of the state income tax law cognizable within that jurisdiction. A like writ of prohibition will issue to restrain contempt proceedings directed against Honorable J. Frank Martin, Chairman of the Tax Commission, who personally appeared before the grand jury but refused to testify concerning, or to adduce in evidence for the grand jury's consideration of income tax violations, certain income tax returns in his possession and under his control.

On October 16, 1943, the county attorney of Tulsa county made request to the Oklahoma Tax Commission for information and evidence as to the income tax returns of 50 citizens (one of whom resides or maintains a place of business in Tulsa county), in order to ascertain whether there are any violations of the state income tax laws cognizable in that jurisdiction. The request was refused.

On October 18, 1943, process issued out of the district court of Tulsa county and was served upon the Oklahoma Tax Commission for the production of said records for the purpose aforesaid, and particularly as to payment of, failure to pay, or failure to file any return or payment of state income tax for the years 1937 to 1941, inclusive, on the part of certain designated citizens.

On October 20, 1943, the Tax Commission and Honorable J. Frank Martin, in person, appeared before the district court of Tulsa county, sought and failed to have vacated the process aforesaid, and Honorable J. Frank Martin appeared before the grand jury, but declined and refused to adduce the evidence requested or to testify concerning it. Whereupon, complaint was made to Honorable S. J. Clendinning, as district judge, presiding over the court of which the grand jury was a part, and in a proceeding for contempt directed against the said J. Frank Martin for his refusal to adduce evidence or testify as to the said income tax returns before the grand jury of said court then in session, after hearing, he was found guilty of contempt, but judgment and sentence was reserved until Friday, October 22, 1943, or as soon thereafter as the matter could by the court be properly pronounced.

This original action was promptly filed and in it is questioned the jurisdiction, together with the exercise of judicial powers, of said court to (1) issue the orders and process of October 18, 1943; (2) overrule the motion to vacate that order; (3) adjudge Honorable J. Frank Martin guilty of contempt for his refusal to adduce the evidence aforesaid or to testify before the grand jury as to that matter then under consideration.

The statutory authority for the prosecution of offenses in violation of the income tax law by complaint or information indorsed by the attorney for the commission "to the same effect as by the other methods of criminal prosecutions provided by law" (68 O. S. 1941 § 902d) evidences a mere cumulative method of procedure against violators of the income tax law. Hinz v. Hunt, District Judge, 96 Okla. 285, 221 P. 1022. And while a certain character of confidence and privilege obtains as to individual income tax returns, the records and files of the commission are by no means a secret (68 O. S. 1941 § 1454), but these records and files may be furnished to "(f) . . . any official person or *body* of any other state or of the United States, who shall be concerned with the administration of any . . . tax in that state or the United States"; and nothing contained in the tax law under consideration "shall be construed to prevent: . . . (d) The disclosing of information or evidence to the Attorney General or *any* county attorney when such information or evidence is to be used by such officials to prosecute violations of the criminal provisions of any state tax

law or of this act." The State Examiner and Inspector or his duly authorized agents have access to the records and files for examination (par. (c) Id.); so have all divisions of the Tax Commission (par. (e) Id.); and likewise the taxpayer and his authorized representatives (par. (a) Id.). But no one charged with the custody of any such record or files shall be required by any court of this state to produce any of them "except when the records or files or the facts shown thereby are directly involved in an action or proceeding under the provisions of this act, or of the state tax law affected . . ." Thus the records and files constitute a privileged communication and the underlying reason for the statutory privilege is the constitutional immunity against self-incrimination (sec. 21, art. 2, Const.), together with the personal right to be secure in "papers and effects" against unreasonable search and seizure (sec. 30, art. 2, Const.); but the rights afforded by statute and Constitution merely create a privilege in court whereby income tax returns are not admissible in evidence in any prosecution against such a person making the return except for violations of the law pertaining to state tax law. The immunity of the law as to self-incrimination and as to security in "papers and effects" in no wise excuses any person from "giving testimony or producing evidence, when legally called upon so to do," which may "tend to establish the guilt of any other person" charged or to be charged with an offense against the laws of the state (sec. 27, art. 2, Const.).

The Oklahoma Tax Commission and Honorable J. Frank Martin, as petitioners, construing the provisions of Title 68 O.S. 1941 § 1454(d) most favorably in aid of its own privilege, and in self-appreciation of the confidential nature of duties enjoined upon the commission by law (68 O. S. 1941 §§ 902 and 1454(a) and (b)), which confidence and privilege is likewise enjoined upon "any person who may have secured information therefrom" from divulging or disclosing "any information obtained from the said records or files or from any examination or inspection of the premises or property of any person," except in the manner provided by law and with the exceptions noted in subdivisions (a), (b), (c), (d), (e), and (f), Idem, urges the necessity of a finding by the Oklahoma Tax Commission from its "examination of the returns in question and/or from information furnished it by said county attorney . . . that said . . . evidence can and will be used . . . in the prosecution of a violation of paragraph (b) of said section 902." Such is not the law. Section (b) of the law concerns the making of "false or fraudulent returns," and the venue of prosecutions arising under subsection (b), Idem, is in "either the county where such return was verified or in Oklahoma county, where such return shall have been filed." It is noteworthy that the inquisitorial nature of the duties performed by a grand jury or by any county attorney does not constitute prosecution of any person, and no such prosecution ensues, unless and until a complaint and indictment is made, returned, and filed; but such duties consist only of the performance of that by law enjoined upon any such official and such an institution as a grand jury, and that duty is to protect the innocent and to accuse the guilty.

And while it is the primary duty of a grand jury to inquire into public offenses committed or triable within the particular county (22 O. S. 1941 §§ 324, 325), it cannot be said that the grand jury of Tulsa county is not performing that exact duty nor that the income tax returns sought may not be used as affidavits, since they are required by law to be verified, or documents for the accusation of other persons separate and apart from the maker who may be charged or accused with violations of the income tax law or "of any state tax law" (sec. 1454(d), Idem), where the venue applicable is in Tulsa county.

The result and effect of the construction by the petitioner urged upon us is that the Oklahoma Tax Commission would become the sole arbiter to determine upon violations of the tax laws

and that its determination of that issue, vital to the welfare of the state, may be based upon its examination of returns of individuals making the returns who may not be sought to be charged. Moreover, such determination by the commission would be from information furnished the Tax Commission without a particular examination on its part aliunde. Whereas, under subdivision (a) of section 902, supra, it is contemplated that "any taxpayer subject to the provisions of this act" may wholly fail or refuse to make any return at all, in which case the venue to prosecute such a taxpayer would be "(c) . . . either the county in which the taxpayer resides or wherein is maintained, by such taxpayer, a place of business"; and it is possible in such cases that the commission would know nothing of such a taxpayer's return and as to the business of such a taxpayer the commission might know nothing. In this connection it may be suggested that the Tax Commission, like all other officers, will be presumed to have done its duty, and that its duty has been performed in such a manner as to secure for the state all moneys in the form of taxes due and owing; that it has investigated all possible sources of income, both as to items and persons; and that as a result thereof the presumption will be indulged that there are no violations of the tax laws of the state; wherefore the county attorney's and the grand jury's investigation is in fact "much ado about nothing." Nevertheless, it must be remembered to be the solemn duty of the grand jury to investigate violations of all criminal laws, including violations of the income tax laws, and the construction urged upon us would relieve all the county attorneys of the state, and the Attorney General, and grand juries from the performance of a duty imposed by law. Likewise, that duty is by law enjoined upon the Governor of the state, and his duty, comparable to that of the President of the United States, is to take care that the laws are faithfully executed. Such interpretation would result in too much of an assumed exclusive responsibility of a bureau. it

would leave enforcement of the particular law to the whim, fancy, indulgence, or diligence, or lack thereof, of individuals comprising a bureau, it would impose judicial power upon those who may not be trained at law and who have no direct responsibility to the people. Such power so vested is ruinous to the financial affairs of a state, detrimental to the enforcement of law, and horrendous to our conception of government. It is thought that the enforcement of the income tax law in its criminal aspect is vested in all officers and agencies of the state charged with the enforcement of law, and that of necessity and by the terms of the act such agencies of the state, and particularly those agencies required "to investigate and return indictments for all character and grades of crime" (sec. 18, art. 2, Const.), including misdemeanors, transferable in proper cases to the county court (Antonelli v. State, 3 Okla. Cr. 580, 107 P. 951), which are within the class of officials and persons entitled and allowed by law to view for themselves and receive in evidence pertinent facts pertaining to violations, if any, of the state tax laws.

The law plainly says:

"Nothing herein contained shall be construed to prevent: . . . (d) The disclosing of information or evidence to the Attorney General or any county attorney when such information or evidence is to be used by such officials to prosecute violations of the criminal provisions of any state tax law or of this Act."

However, the commission interprets its powers so as to require, as a condition precedent to its furnishing of such evidence requested or subpoenaed, knowledge on the part of the Tax Commission that such information or evidence will be used and that it can be so used. In other words, the commission thinks its duty is to find actual existence of good faith on the part of other officials charged by law with the enforcement of law and to pass upon the materiality and admissibility of the evidence sought for ascertainment of the

violation of the tax laws by persons consisting of individuals and corporations that it may "wot not of" except by names furnished to it in connection with the request and subpoena. Such an interpretation of law would make the Tax Commission an adjunct of the district court and a supervisor of morals and legal abilities possessed by prosecuting officers and courts. The proposition ought not to require more to refute its soundness than the mere statement of it.

Power of the grand jury is not dependent, after being convened, upon the court, but it is original and complete, and its duty is to inquire into all offenses committed or triable within the county, whether from its own knowledge, that of its members, or that of the court, state's attorney, or from any source, including documents and affidavits. The court cannot limit the scope of the investigation of the grand jury. People ex rel. Ferrill v. Graydon, 333 Ill. 429, 164 N.E. 832; People v. Sheridan, 349 Ill. 202, 181 N.E. 617, 106 A.L.R. 1383.

The scope of a grand jury's inquiry is not to be narrowly limited by forecasts of the probable result of the investigation, even by a court. Carroll v. United States, 16 Fed. 2d 951; writ of certiorari denied, 273 U.S. 763, 71 L. Ed. 880; O'Connell v. United States, 40 Fed. 2d 201; writ of certiorari dismissed, 75 L. Ed. 1472; People v. Doe, 247 App. Div. 324, 286 N.Y.S. 343.

If there was logical relevancy between the object sought and the testimony demanded, it was the duty of Honorable J. Frank Martin to give it. Re National Window Glass Workers, 287 Fed. 219; United States v. Invader Oil Corp., 5 Fed. 2d 715; Re Black, 47 Fed. 2d 542; Re Grand Jury Proceedings, 4 Fed. Supp. 283.

The mere fact that the grand jury had not entered upon the investigation of some particular and specific charge afforded no reason for holding that a subpoena for records should be quashed. United States v. Invader Oil Corp., su-

pra. Nor does the statute of limitations limit the scope of a grand jury's investigation, for offenses may be found to exist within the statute of limitations. State v. Kasherman, 177 Minn. 200, 224 N.W. 838; certiorari denied, 280 U.S. 602, 74 L. Ed. 647, 50 S. Ct. 85.

It would not be presumed that the grand jury considered or acted upon any matter not properly before it (People v. Sheridan, supra), or that no charge of a criminal offense was involved (Idem). "The inquisitorial power of the grand jury is the most valuable function which it possesses today and, far more than any supposed protection which it gives to the accused, justifies its survival as an institution. As an engine of discovery against organized and far-reaching crime, it has no counterpart. Policy emphatically forbids that there should be any curtailment of it except in the clearest cases." Re Grand Jury Proceedings, supra. So that even secrecy of the ballot box enjoined by law is to be revealed to a grand jury. Miller v. Price, 260 Ky. 488, 86 S. W. 2d 152. And laws providing special investigating bodies for particular offenses do not limit the power of the grand jury to make investigations as to such offenses or to divest it of such power. State v. Larson, 10 N. J. Misc. R. 384, 160 Atl. 556; Hinz v. Hunt, supra. The people are protected from vicious reports of grand juries not amounting to indictments or presentments by the court's control over its journals and through the medium of motions to expunge from the official court records. Re Report of Grand Jury, 152 Md. 616, 137 Atl. 370.

There is involved herein the contempt charged upon Honorable J. Frank Martin, and as to that matter the majority have authorized the issuance of a writ of prohibition, but it will be erroneously issued. Whether the contempt charged to have been committed constitutes direct or indirect contempt of court is wholly immaterial. However that matter may be viewed, a refusal to testify before a grand jury is, in fact, a refusal to testify before a district court presiding over a grand jury because the grand

jury is an integral part of the court and the whole consists of all the parts.

No deliberative body can maintain their dignity or respect without power to protect itself or without power somewhere imposed to enforce obedience to its commands uttered and issued in connection with its proper functions.

Our attention is called to Moss v. Arnold, 63 Okla. Cr. 343, 75 P. 2d 491, wherein an application for writ of prohibition was filed in the Criminal Court of Appeals, and it was sought to prohibit punishment of a contempt committed by one Moss in the presence of the district court of Oklahoma county. Therein the trial court adjudged a contempt to exist by reason of Moss' tampering with the jury, but the judge, the Honorable Ben Arnold, did not see the tampering. Therein a writ of prohibition was denied, but the Criminal Court of Appeals apparently adhered to its erroneous view expressed in Ex parte Owens, 37 Okla. Cr. 118, 258 P. 758, that contempt of court is a crime. The Supreme Court has adjudged that it is not. State ex rel. Attorney General v. Owens, 125 Okla. 66, 256 P. 704, 52 A.L.R. 1270, and the federal courts have held that the Supreme Court is supreme. Idem, Ann.

However, the writ of habeas corpus issued by the Criminal Court of Appeals in the Owens Case was by certiorari brought before the Supreme Court, and it was held for nought. Likewise, it was adjudged that the Criminal Court of Appeals is an inferior court, created by law under permissive sections of the Constitution, and vested only with criminal appellate jurisdiction; that it is without power to issue any character of a writ except in aid of the appellate criminal jurisdiction by law conferred upon it. It has no jurisdiction to issue either the writ of prohibition or habeas corpus in an original action, for the application for such writs constitutes special proceedings.

The Constitution (sec. 25, art. 2) empowers the Legislature to pass laws defining contempts. The Legislature has performed that duty (21 O.S.A. § 565) by dividing contempts of court into two classes, direct and indirect contempts. Within the statutory definition of direct contempts falls: "The unlawful and willful refusal of any person to be sworn as a witness *and the refusal to answer any legal or proper question.*" By the provision of the Constitution, supra, the Legislature has power to enact laws "regulating the proceedings and punishments in matters of contempt." It is Hornbook law that the right to a trial by jury is not a matter of procedure. It is a substantive right, existing or not existing according to the law of the land. At common law no right of trial by jury existed in cases of contempt of court, nor does such right pertain today in cases involving domestic relations, bankruptcy, or industrial court matters and the like. State v. Owens, supra.

By an act of the Territorial Legislature of February 6, 1895 (Wilson's Rev. and Ann. St. 1903, sec. 2127), trial by jury was provided "in all cases of indirect contempt," but the Supreme Court of the Territory declared the provisions of the statute invalid. Smith v. Speed, 11 Okla. 95, 66 P. 511, 55 L.R.A. 402.

The Territorial Court held that the equitable and common-law jurisdiction granted to courts was a part of due process of law guaranteed to every citizen as a protection of his life, liberty, and property, and that the jurisdiction of these courts was as much due process of law as is the right of trial by jury. That the power to punish for contempt was inherent in the courts, necessary for their preservation, and a part of the law of the land, for the protection of the citizenship and of their instrumentalities. Wherefore, the Legislature "has no power to take away from the courts . . . the right to punish a contempt . . . or to cause the matter to be submitted to a trial by jury."

Since, by force of the Constitution, the common law obtains in this jurisdiction in aid of lawful statutes, the wisdom of the territorial decision, supra, is as sound and applicable today as it was in the good year 1901.

The Criminal Court of Appeals has persisted in asserting that "the punishment imposed [in a proceeding for contempt of court] is a sentence in a criminal case." Deskins v. State, 62 Okla. Cr. 314, 71 P. 2d 502. And this erroneous adjudication by an inferior court, without jurisdiction in the subject matter, should not go unnoticed so as to corrupt the law. "In no case shall a penalty or punishment be imposed for contempt, until opportunity to be heard is given." Section 25, art. 2, Const. And a hearing in American jurisprudence contemplates a written accusation with right to adduce witnesses in defense and to be represented by counsel of choice. It is also provided by the Constitution that disobedience, not in the presence or hearing of a court, of an order of injunction or restraint may only be punished by contempt after a trial to a jury (if one is demanded) as to the guilt or innocence of the accused. Section 25, art. 2, Const. The inference is that in no other such case, whether direct or indirect, is the accused in a contempt proceeding entitled to a trial by jury. State v. Owens, supra. That inference is resolved by the law of the land, for "The constitutional provision . . . merely affirm a pre-existing power. Without the power, courts could not fulfill their responsible duties for the good of the public." Moss v. Arnold, supra.

The Legislature has power by law to regulate "punishment" in matters of contempt. Section 25, art. 2, Const. It is within the proper province of the Legislature to provide by statute reasonable limitations upon punishments for contempt.

In 6 R. C. L. 492, the view obtains that a direct contempt committed "in the presence of the court" may consist of a contempt against any constituent part of the court engaged in the business of the court, according to law. For by the law, there the court is present, and the court consists "not of the judge, the courtroom, the jury, or the jury room, but of all of these combined"; and that any behavior constituting a contempt committed in any one of the constituent parts of the court while engaged in the business devolved upon it by law must be a contempt committed in the immediate view and presence of the court. And disobedience to the judicial authority of the court is a contempt unless the party accused can show sufficient cause to excuse it.

In the light of these authorities, it is clear that a contempt committed in the grand jury room, before the grand jury of the district court of Tulsa county, by the refusal of Honorable J. Frank Martin to testify or produce pertinent evidence to the matters under consideration, towit, possible violations of Income Tax Laws or other tax laws, was committed "in the presence of the court," and it is preposterous to hold that such a contempt must be committed within the ocular view or range of vision of the person who may happen to be judge of that court. The person of the judge of that court is no more a part of that court than is the inquisitorial instrumentality represented by the grand jury.

Ignorance of the law, if any, on the part of Honorable J. Frank Martin is no defense, although the present confused state of the law may constitute mitigating circumstances that ought to be taken into consideration in fixing punishment for the contempt by the administrator committed.

For the reasons stated, I again respectfully dissent, and am authorized to say that Mr. Justice ARNOLD concurs herein.