506 P.2d 748 (1972)
EUGENE CERVI & CO., a Colorado corporation, d/b/a Denver Daily Reporter, Inc., Plaintiff-Appellant,
v.
William F. RUSSELL, Jr., M.D., (Dan Tipton, by substitution), Defendant-Appellee, Colorado Department of Health, Intervenor-Appellee.
No. 71-351.
Colorado Court of Appeals, Div. I.
December 19, 1972.
Rehearing Denied January 9, 1973.
Certiorari Granted March 12, 1973.
*749 Gorsuch, Kirgis, Campbell, Walker & Grover, Leonard M. Campbell, Matthew A. Henderson, Richard B. Harvey, Denver, for plaintiff-appellant.
Lyle E. Miller, Golden, for defendant-appellee.
Duke W. Dunbar, Atty. Gen., William Tucker, Asst. Atty. Gen., for intervenor-appellee.
William E. Russell, Denver, for amicus curiae Colo. Press Assn.
Selected for Official Publication.
SILVERSTEIN, Chief Judge.
Eugene Cervi & Co. (Cervi) brought this action seeking a mandatory injunction against Doctor William F. Russell, Jr. (Russell), Medical Director for Jefferson County and local registrar of vital statistics, to compel Russell to furnish Cervi certain requested information from birth and death certificates, which Russell had refused to provide. The Colorado Department of Health, the official custodian of vital statistics records, intervened on behalf of Russell. After a trial to the court on stipulated facts, the court entered judgment dismissing the complaint. We affirm.
The stipulated facts show that Cervi publishes a newspaper and "is presently engaged directly in providing a service to its subscribers and to the public whereby [Cervi] accumulates and disseminates, for a fee, as a news service, data from birth and death certificates in Denver and other counties in the Denver Metropolitan area, except Jefferson County." The information furnished includes, as to births, names and addresses, if available, of the parents, date of birth, and sex of child; and as to deaths, the name and address of the decedent and date of death. Cervi requested that Russell furnish it with the above information from all current certificates, and offered to pay the statutory fee therefor. Russell refused to furnish this information on the ground that statutory restrictions prevented him from doing so. It is further stipulated that birth lists are requested, for commercial purposes, by insurance companies, toy distributors, and by baby food, clothing and magazine salesmen. Death lists are requested, also for commercial purposes, by memorial groups and by tombstone and other salesmen.
The pertinent statutory provisions are, as follows:
"It is declared to be the public policy of this state that all public records shall be open for inspection by any person at reasonable times, except as provided, in this article or as otherwise specifically provided by law." 1969 Perm.Supp., C. R.S.1963, 113-2-1.
"All public records shall be open for inspection by any person at reasonable times, except as provided in this article, or as otherwise provided by law,. . . ." 1969 Perm.Supp., C.R.S. 1963, 113-2-3(1).

*750 "Vital statistics records shall be treated as confidential, but the department of public health shall, upon request, furnish to any applicant having a direct and tangible interest in a vital statistics record a certified copy of any record registered under the provisions of this article.. . . For any search of the files and records when no certified copy is made, there shall be paid by the applicant a fee of two dollars for each hour or fractional hour of time of search . . . ." 1967 Perm.Supp., C.R.S.1963, 66-8-17.
Cervi asserts that it has a "direct and tangible interest" in the records, and that under the public policy of the state as set forth in the public records statute, it is entitled to inspection of the records. Cervi further contends that if the statute prevents it from receiving the requested information, the statute violates Cervi's constitutional right of freedom of the press.
The section of the statute which provides that "[v]ital statistics records shall be treated as confidential" exempts these records from the right to inspect given by the public records act. Therefore Cervi is entitled to copies of these records only if it can show a "direct and tangible interest" as required by the statute. The words "direct and tangible" must be interpreted in the light of the entire section. Stevens v. Nave-McCord Mercantile Co., 8 Cir., 150 F. 71. They establish the criteria under which the confidentiality of the records can be avoided. "Direct" has been defined as indicating "immediate." People v. Boylan, 8 Cir., 25 F. 594. As used in the statute, an "applicant having a direct and tangible interest" is one who has a significant legal relationship to the person who is the subject of the record. Neither Cervi nor any other person seeking copies for commercial purposes has that relationship.
It is significant that the statute, after making all vital statistics records confidential, creates an exception for one who has the specified interest in "a vital statistics record," and not in an unlimited number of records. The term, "direct and tangible interest," is a term of limitation. Cervi's interest is in the limitless use of the information, which use is clearly contrary to the intent of the statute. Statutes must be construed to carry out their beneficent purposes, and not to defeat them. State v. Elkins, 84 Colo. 409, 270 P. 875.
The confidentiality of vital statistics records is similar to that afforded information contained in income tax returns. As was stated in Oklahoma Tax Commission v. Clendinning, 193 Okl. 271, 143 P.2d 143, 151 A.L.R. 1035.
"This act constitutes the state's compact and pledge to the taxpayer that his tax return shall be kept inviolate, confidential and privileged, and not disclosed to anyone, nor in any manner, except as specifically authorized by the act itself, and will be used only for the purposes specifically provided. . . . We are not at liberty to minimize the declared public policy evinced by these express provisions of the act making the information contained in said returns confidential and privileged."
Vital statistics records, being confidential, are also, by the express terms of the statute, exempt from public inspection. The provisions of section 66-8-17 providing for search of the records by their custodian do not authorize the custodian to provide a copy of the record or to divulge their contents. The purpose of such a search is to determine whether a particular record exists. The information contained in such a record can only be released to those having the prescribed interest.
The freedom of the press and Cervi's right to publish and disseminate birth and death information are not at issue here. The only issue is Cervi's right to receive this information from the department of public health and the duty of that department to preserve the confidential nature of its records. Cervi is at liberty to publish the information, but must obtain it from other sources.
*751 The Colorado Press Association was permitted to appear as amicus curiae. In its brief it asserts that 1967 Perm.Supp., C.R.S.1963, 66-8-17, is void as an unlawful delegation of power. This issue was not raised by the parties to the appeal, and will not be considered by this court. Farmers' Union Ditch Co. v. Rio Grande Canal Co., 37 Colo. 512, 86 P. 1042; Denver United States National Bank v. People, 29 Colo.App. 93, 480 P.2d 849.
The judgment is affirmed.
COYTE and SMITH, JJ., concur.