Mr. Randy Miller Executive Director, Department of Revenue
QUESTIONS:
1. Whether the term `proper judicial order' as used in s.213.053(2), F.S. (1980 Supp.), as amended, contemplates a subpoena duces tecum issued by the clerk of a circuit court or by a state or federal grand jury?
2. Whether the term `official purposes' as used in s. 213.053(2), F.S. (1980 Supp.), as amended, applies to the use of the statutorily specified documents internally by the Department of Revenue, or is the term to be construed to include official purposes of other agencies of this state such as the Department of State (relating to an application for consumer exemption certificate), or the Department of Legal Affairs (for use in investigations pursuant to Rico Activities)?
3. If the second question is answered in the negative as it relates to other agencies of the state, may the Department of Revenue furnish information otherwise declared confidential by s.213.053(1) and (2), F.S. (1980 Supp.), as amended, to the agencies of this state as set forth in question (2) under the provision of s. 213.053(5), F.S. (1980 Supp.), as amended?
SUMMARY:
The term `proper judicial order' as used in s. 213.053(2), F.S. (1980 Supp.), as amended, includes a subpoena duces tecum issued by the clerk of a circuit court or for a state grand jury at the request of a state attorney. The term `official purposes,' as used in s. 213.053(2), F.S. (1980 Supp.), as amended, refers to the use of the statutorily specified documents internally by the Department of Revenue, only, unless a specific exception is applicable.
At the outset, it must be noted that the Attorney General has no authority to pass upon federal laws or to interpret the rules of federal courts. This authority lies solely within the purview of the federal judiciary.
Section 213.053(2), F.S. (1980 Supp.), provides, in pertinent part:
 . . . all information contained in returns, reports, accounts, or declarations received by the department, including investigative reports and information, is confidential except for official purposes. Any officer or employee of the department who divulges any such information in any manner, except for such official purposes or in accordance with a proper judicial order, is guilty of a misdemeanor . . . .
On its face, the section makes certain information confidential,except for official purposes or in accordance with a properjudicial order. Neither term is qualified nor limited in its application.
AS TO QUESTION 1:
The word `proper' is an adjective. 73 C.J.S. Proper, pp. 132-33; Black's Law Dictionary 1381 (4th ed. 1968); The American Heritage Dictionary of the English Language 1048 (Rev. ed. 1979). The word `judicial' is also an adjective. 50 C.J.S. Judicial, p. 559; Black's Law Dictionary 983 (4th ed. 1968); The American Heritage Dictionary of the English Language 709 (Rev. ed. 1979). In the instant context, both `proper' and `judicial' describe or modify the word `order.'
The word `order,' as employed in the instant context, is a noun and means a command, mandate; a command or direction authoritatively given; a directive of a court or judge made in writing and not included in a judgment; a command of a court or judge. 67 C.J.S. Order, p. 895; Black's Law Dictionary 1247 (4th ed. 1968); The American Heritage Dictionary of the English Language 924-25 (Rev. ed. 1979); see also Stevenson v. Hearst Consol. Publications, Inc., 214 F.2d 902 (2nd Cir. 1954).
`Subpoena' is process or a writ of a judicial nature. 97 C.J.S.Witnesses ss. 20, 25; Black's Law Dictionary 1545 (4th ed. 1968). The term `process' is synonymous with the term `writ' and in its narrow sense is limited to judicial writs issued out of a court and under the seal thereof. 72 C.J.S. Process s. 1. Defined, `process' is a means whereby a court compels compliance with its demands, and includes all writs which may be issued during the progress of an action. Black's Law Dictionary 1369-70 (4th ed. 1968). Process includes subpoenas. 72 C.J.S., Process s. 1; AGO 067-56; see also McCoy v. State, 338 So.2d 52, 54-55 (4 D.C.A. Fla., 1976).
Subpoenas are issued to compel the attendance of a witness. Coplan Pipe and Supply Company v. Ben-Frieda Corporation, 256 So.2d 218
(3 D.C.A. Fla., 1972), 97 C.J.S. Witnesses ss. 15-20, p. 370.Subpoenas are issued under the seal of the court. Fla.R.Civ.P. 1.410. So, too, a subpoena duces tecum is a process or writ whereby a court commands a person who has in his possession or control some book or paper which is pertinent to the issues of a pending controversy to attend and produce it for use at trial. State ex rel. Everglades Cypress Co v. Smith, 139 So. 794 (Fla. 1932); 97 C.J.S. Witnesses s. 25. Such a subpoena is the usual and ordinarily proper method of compelling production before the court which has inherent powers to issue the subpoena. 97 C.J.S.Witnesses, supra; Ex parte Hart, 200 So. 783, 240 Ala. 642 (Ala. 1941). A subpoena then, like a subpoena duces tecum, is a court order. Supportive of this conclusion is Aron v. Huttoe,258 So.2d 272 (3 D.C.A. Fla., 1972), where the court twice referred to contempt proceedings as being properly instituted by the lower court to punish for disobedience of a `court order,' the subpoena.See also 97 C.J.S. Witnesses s. 27(c).
Your question also raises the issue of whether the validity of a subpoena duces tecum is affected when issued by the clerk of the court. The only theory that would support a negative answer, assuming the subpoena is valid on its face, in form and in its preparation, is that the clerk has acted in a mere ministerial capacity. However, authority appears to lead to the contrary conclusion. The clerk is an integral part of the court, and his acts, when performed within the scope of his official duties, are the acts of the court. Danna v. Yazoo M.V.R. Co., 154 So. 365
(La.2d Cir. 1934); Burns v. Ohio, 360 U.S. 252, 3 L.Ed.2d 1209,79 S.Ct. 1164 (1959). The official duties of a clerk of court embrace every act which the law requires him to perform by virtue of his office, not only those imposed by statute but also by the rules of court and such other duties that are the established practice of the court. Howard v. United States, 102 F. 77 (8th Cir. 1900), affirming, 93 F. 719, and affirmed, 184 U.S. 676;46 L.Ed. 754, 22 S.Ct. 543; Druissi v. Almand, 75 So.2d 905 (Fla. 1954); Ward v. Fountain, 122 So.2d 209 (1 D.C.A. Fla., 1960).
The duty of the clerk of circuit court to issue process in civil and criminal cases is provided by statute. See for example, ss.28.07 and 932.48, F.S., and Florida Rules of Court. Upon commencement of an action, any `process' authorized by law shall be issued by the clerk or judge under his signature and the seal of the court. Fla.R.Civ.P. 1.070(a). Every subpoena for testimony before the court shall be issued by the clerk under the seal of the court. Fla.R.Civ.P. 1.410(a)(1). The subpoena may also command production of documentary evidence. Florida Rules of Civil Procedure 1.410(b) and 1.351(b) and (c). As the clerk acts pursuant to official duties as promulgated by both statute and rule, the performance of such are the acts of the court as demonstrated by being `under the seal of the court.' Thus, failure to obey the subpoena without adequate excuse, may be deemed a `contempt of the court from which the subpoena issued.' Florida Rules of Civil Procedure 1.410(e) and Fla.R.Crim.P. 3.220(d).
As to any doubt about subpoenas issued for a grand jury, the state attorney or his designated assistant causes subpoenas duces tecum to be issued, when requested by the grant jury. Section 905.185, F.S. The state attorney has the unambiguous grant of authority to use the `process of his court' to request the issuance of a witness subpoena or subpoena duces tecum. Section 27.04, F.S.; State v. Jett, 358 So.2d 875 (3 D.C.A. Fla., 1978). It is the process of the court, the subpoena, which requires one subpoenaed to testify, pursuant to s. 27.04, F.S. McCoy v. State, supra. This power also existed at common law. None of the provisions of the constitution or statutes of the state or of the United States are inconsistent with the common law. State ex rel. Martin v. Michell,188 So.2d 684 (4 D.C.A. Fla., 1966); cert. discharged,192 So.2d 281 (Fla. 1966).
While s. 213.053(2), F.S. (1980 Supp.), sets out the confidential status of the information gathered by the department, nothing on the face of the statute demonstrates the Legislature has accorded a privileged status to taxpayer information and no section thereof contains even a hint that the information or reports in question are privileged. Neither does the statute purport to grant any immunity to the department or its officers and employees from the process of the courts or grand juries or in any manner immunize the subject data and records from the court's process. Cf. ss.324.051(1)(b) (providing that reports of accidents are made without prejudice and shall be for the confidential use of the department and shall not be used as evidence in any trial arising out of an accident); 443.16(3) (all communications, written or oral, made in connection with the requirements and administration of ch. 443, are absolutely privileged); 448.06(4) (communications are not subject to subpoena, the information is deemed privileged matter and subject to the complete immunities thereby); see also
s. 90.501, F.S. In light of the existence of specific statutory privileges for certain information, data and reports of, or in the custody of, other state agencies, it must be concluded that the Legislature has chosen not to confer such status on the information herein concerned. Had the Legislature intended the information herein concerned to be privileged or immunized from the process of the court, it would have so stated. Consequently, as s. 213.053(2), F.S. (1980 Supp.), does not purport to make the information mentioned therein privileged, and hence inadmissible as evidence, it follows that the information is admissible in court, whether civil or criminal, and before any federal or state grand jury. Cf. AGO 064-103.
Section 213.053(2), F.S. (1980 Supp.), does prohibit the department's officers and employees from voluntarily divulging information. However, this statutory directive does not remove the information or records in question from the jurisdiction of the court, grand juries or the State Attorney's Office, nor does it exclude such from the compulsion of responding to a subpoena of the court. The statute was not intended to prevent the disclosure of the contents of official documents pursuant to compulsion of a subpoena when the contents of such are pertinent to a legal inquiry. Cf., e.g., ss. 324.051(1)(b), 443.16(3) and 448.06(4), F.S. The statute does not in the slightest degree affect the jurisdiction of the court or its process. Accord Bell v. Bankers Life Casualty Co., 327 Ill. App. 321, 64 N.E.2d 204 (Ill. 1945); Commonwealth v. Mellon National Bank and Trust Co., 360 Pa. 103,61 A.2d 430 (Pa. 1948); cf. New York State Department of Taxation and Finance v. New York State Department of Law, Statewide Organized Crime Task Force, 44 N.Y.2d 575, 378 N.E.2d 110 (N Y 1978).
Although not directly raised by your question, it is necessary to point out that the issue of whether the records within the contemplation of s. 213.053, F.S. (1980 Supp.), are immunized from the process of the court or privileged and not admissible into evidence is to be raised by the party subpoenaed and determined by the judge presiding over the grand jury or trial. In any event, the courts will have to make such determination as to its process, procedure, powers and functions — and obedience thereof — at least to the extent of ruling on a proper motion to vacate or quash any such subpoena or process of the court.
Until legislatively or judicially determined otherwise, it is my opinion that the term `proper judicial order' as used in s.213.053(2), F.S. (1980 Supp.), includes a subpoena duces tecum issued by the clerk of a circuit court or for a state grand jury. However, whether a subpoena duces tecum is valid or the records subpoenaed privileged or immunized from the process of the court must, on a case-by-case basis, be determined according to the peculiar facts arising from the issuance of the subpoena itself and other relevant sources. It is then a judicial matter being within the sound discretion of the judiciary.
AS TO QUESTION 2:
Section 213.053, F.S. (1980 Supp.), applies to the tourist development tax levied by the counties, taxes administered by the Department of Revenue and pertinent portions of the insurance code. Subsection (2) of s. 213.053 states that, `[e]xcept as provided in subsections (3), (4), (5), (6), and (7), all information . . . received by the department . . . is confidential except for official purposes.'
Cumulatively, the provisions of subsections (3) through (7) are basically the same as exceptions provided in the repealed sections in effect prior to passage of s. 213.053, F.S. (1980 Supp.). However, there are minor differences. Section 198.09, F.S. 1979, provided for publication of statistics and release of information to the Auditor General or his authorized representative in the performance of his official duties to the extent not prohibited by federal law. The Auditor General was required to be held to the same confidentiality requirements as the department. Section 198.09, F.S. 1979, also permitted information sharing with the IRS and `the proper officer of any state imposing' this specific tax. Section 199.222(1), F.S. 1979, provided the same exceptions to confidentiality as s. 198.09, F.S. 1979, and added that the information was available to the taxpayer. Section 206.95, F.S. 1979, expressed the requirement of confidentiality but excepted the `officer of the state entitled to receive the same in his official capacity.' Section 211.33(6), F.S. 1979, merely reiterates the exception for statistics. While former s. 213.072, F.S. 1979, also excepts statistics and information for purposes of exchange with the federal government, it also provided for disclosure to `properly qualified legislative committees' and to the multistate tax commission. Lastly, s. 214.21, F.S. 1979, had specifically provided for confidentiality except for official purposes `within the department;' further exceptions were statistics, names and addresses of persons filing the returns, information to the U.S. Secretary of the Treasury or his delegate, as well as the proper officer `of any other state imposing taxes made applicable to this chapter.' Information was also available to the Auditor General although the same standards of confidentiality were to be applicable. Therefore, review of the confidentiality provisions reveal that they varied from statute to statute. While violations were a second degree misdemeanor according to some of the statutes; others had no penalty provisions.
The title of ch. 80-222, Laws of Florida, in pertinent part, states that the creation of s. 213.053, F.S. (1980 Supp.), is to provide uniform requirements for confidentiality and information sharing. To this end, ss. 198.09, 199.222(1), 206.95, 211.33(6), 213.072 and 214.21, F.S. 1979, were repealed. So expressed, s.213.053, F.S. (1980 Supp.), was intended to merely replace those then existing confidentiality provisions, thereby establishing uniformity. The Florida Statutes now provides uniform confidentiality as to all chapters enumerated and although there were no substantial changes, the law is now expressed in general terms and any section that dealt with or contained a different element than that now enumerated in s. 213.053, F.S. (1980 Supp.), is repealed.
It is important to note that the language `[e]xcept as provided in subsections (3), (4), (5), (6), and (7)' precedes the general term `official purposes.' Thus, even if the term `official purposes' creates ambiguities, reference to legislative intent will aid in the proper construction. Traditionally, legislative intent is determined from the language used, the subject matter involved, the purpose, and any other relevant matter. Englewood Water District v. Tate, 334 So.2d 626 (2 D.C.A. Fla., 1976); State exrel. Register v. Safer, 368 So.2d 620 (1 D.C.A. Fla., 1979); AGO 057-259.
The subject matter is, in both the repealed sections and s.213.053, F.S. (1980 Supp.), confidentiality of taxpayer information. The purpose of providing confidentiality in the former sections was dual: one, to promote full disclosure of information by the taxpayer and secondly, to afford protection of the information once obtained. Generally, Oklahoma Tax Commission v. Clendinning, 193 Okla. 271, 143 P.2d 143, 151 ALR 1035 (Okla. 1943). The purpose of s. 213.053, is merely to provide uniformity. Senate Staff Analysis and Economic Impact Statement, May 1, 1980, Bill No. SB565, Senator Myers, Sponsor. Neither subject matter nor purpose was changed.
The statute reads: a taxpayer can inspect his return, receive an abstract thereof, and authorize divulgence of specific information concerning his account; the department can publish statistics which do not identify particular accounts, reports, or returns (or disclose the names and addresses of those taxpayers who are required to file reports or returns, s. 4, ch. 81-179); the department can make information available to named federal officers or the proper officer of any state in order to comply with any formal agreement for the mutual exchange of state information with the federal Internal Revenue Service or any state; and any information received in connection with the administration of taxes would be available to the Auditor General (or the Comptroller, s. 4, ch. 81-179), unless prohibited by federal law. Otherwise, the information is confidential except for official purposes. No other exceptions are set out, intended or implied.
Therefore, as the meaning of the term `official purposes' must be determined from the language used and the purpose for which the state was enacted, Peninsular Ind'l. Ins. Co. v. State,55 So. 398, 61 Fla. 366 (Fla. 1911), and all parts of the statute must be read together, Paskind v. State ex rel. Salcines, 390 So.2d 1198
(2 D.C.A. Fla., 1980), it must be concluded that the term `official purposes' applies only to the duties and functions of the Department of Revenue and intradepartmental use except as otherwise specifically exempted by the statute. To construe otherwise would extend the meaning of the term as previously used in the repealed sections and would defeat the legislative purpose and intent, where creation of s. 213.053, F.S. (1980 Supp.), as amended, did not indicate a change in the law. To permit officials of other state agencies access to taxpayer information received by the Department of Revenue would destroy the purpose of confidentiality of the statute. Any ambiguity as to legislative intent should receive the interpretation that best accords with the public benefit. In re Ruff's Estate, 32 So.2d 840 (Fla. 1947).
The rule of statutory construction, `expressio unius est exclusioalterius,' is also applicable and means that a statute enumerating things on which it is to operate or forbidding certain things must be construed as excluding from its operation all things not expressly mentioned therein. Ideal Farms Drainage District v. Certain Lands, 19 So.2d 234, 154 Fla. 554 (Fla. 1944). A legislative direction as to how a thing shall be done is, in effect, a prohibition against its being done in any other way. Alsop v. Pierce, 19 So.2d 799, 155 Fla. 184 (Fla. 1944); Florida Legal Services, Inc. v. State, 381 So.2d 1120 (1 D.C.A. Fla., 1979). Here, the Legislature has specifically enumerated the exceptions to confidentiality of taxpayer information. The exception contained in s. 213.053(6), F.S. (1980 Supp.), as amended, specifically designates the state officers who have access to the information in the performance of their official duties. To broaden the construction of `official purposes' to include any other agencies or officers of the state would destroy the intent of the Legislature and the purpose of the statute as well as violate the well established rules of statutory construction.
Section 2, ch. 81-165, Laws of Florida, effective January 1, 1982, amended subsection (7) to provide that nothing in s. 213.053, F.S., shall prevent the department from providing information relative to ch. 377, F.S., to the proper state agency in the performance of its official duties. Further, s. 11, ch. 81-179, Laws of Florida, provides that the department shall report to the Comptroller the names and addresses of all persons who have claimed an exemption pursuant to s. 199.072(4), F.S., or a deduction pursuant to s. 220.63(5), F.S. However, these amendments do not in any way affect my response as to the construction of the term `official purposes.' Therefore, pending legislative clarification and based on the foregoing, I am compelled to conclude that the term `official purposes' as used in s.213.053(2), F.S. (1980 Supp.), as amended, applies to the use of the statutorily specified documents internally by the Department of Revenue, only, unless a specific exception is applicable.
AS TO QUESTION 3:
Your third question is answered in the negative by my response to Question 2. Cf. AGO 073-109.
Prepared by: Greg P. Waldbart, Assistant Attorney General