CENTRAL LIQUOR COMPANY, a partnership composed of Robert Z. Naifeh, Appellee,

and

Stuart S. Carey, d/b/a Metro Beverage Company, Appellee,

v.

OKLAHOMA ALCOHOLIC BEVERAGE CONTROL BOARD, composed of Joan Blankenship, Heber Finch, Winston Boydston, Randall Spears and Allen Morain as Members and Richard Crisp as Director of the Alcoholic Beverage Control Board, Appellants,

and

Joseph E. Seagrams and Sons, Inc., an Indiana corporation, Appellant,

and

Heublein, Inc., a corporation, Appellant,

and

Oklahoma Retail Liquor Association, Amicus Curiae,

and

Bacardi Imports, Inc., Amicus Curiae.

Nos. 57284, 57394.

Supreme Court of Oklahoma.

Feb. 9, 1982.

Jeff L. Hartmann, Oklahoma City, for appellee Central Liquor Co.

Spradling, Alpern, Friot & Gum by Stephen P. Friot, Oklahoma City, for appellee Stuart S. Carey, d/b/a Metro Beverage Co.

Jan Eric Cartwright, Atty. Gen., Michael C. Conaway, and James B. Franks, Asst. Attys. Gen., Deputy Chief, Civ. Div., Oklahoma City, for appellants Oklahoma Alcoholic Beverage Control Board, Etc.

Crowe & Dunlevy by D. Kent Meyers, Oklahoma City, Pillsbury, Madison & Sutro by Parker A. Maddux, San Francisco, Cal., Fuller, Tubb & Pomeroy by Jerry Tubb, Oklahoma City, M. Jacqueline McCurdy, Vice-President—Regulatory Counsel, New York City, for appellant Joseph E. Seagram & Sons, Inc.

Hastie & Kirschner by John W. Swinford, Jr., Oklahoma City, Howrey & Simon by Ralph J. Savarese, Ray A. Jacobsen, Jr. and Mary C. Lyons, Washington, D. C., for appellant Heublein, Inc.

J. W. Doolin, Lawton, for amicus curiae Oklahoma Retail Liquor Assn.

Crowe & Dunlevy by Val R. Miller, Oklahoma City, for amicus curiae Bacardi Imports, Inc.

HODGES, Justice.

The seminal question presented is whether non-resident sellers of intoxicants can be compelled to sell Oklahoma wholesalers substantial quantities of alcoholic beverages for resale in other states at prices controlled by the Oklahoma Statutes.

In 1978, appellees, Central Liquor Company, a partnership comprised of Robert Z. and Franklin Naifeh (Central) and Stuart Carey, d/b/a Metro Beverage Company (Metro), and other licensed wholesalers, began to purchase large quantities of popular brands of liquors from non-resident sellers, including Heublein, Inc. (Heublein), and Joseph E. Seagram & Sons, Inc. (Seagram), appellants, for resale outside the State of Oklahoma. From 1978 until 1980, although the market for intoxicants in Oklahoma has remained constant or increased gradually, total annual sales of wine and liquor increased 51% from 24.7 million to 37.2 million liters. Seventy percent of the increase consisted of products shipped for resale outside the State of Oklahoma. By 1980, 23% of all products sold by licensed Oklahoma liquor wholesalers were resold to wholesalers in other states, principally California, who were not franchised distributors of Heublein and Seagram products. Central received 41 million dollars in 1980 from out-of-state sales, which comprised 76% of all out-of-state sales; and during the last three months of 1980, Metro derived 3.6 million dollars from out-of-state sales. The effect of the "Oklahoma connection" is pellucidly dramatized by the shift in sales of products. The growth of sales through Oklahoma parallels the comparable decline in business by franchised California wholesalers.

There are no distilleries located in Oklahoma. Central, Metro, and other Oklahoma wholesalers obtain the intoxicating beverages which they sell from warehouses maintained by Heublein, Seagram, and other licensed non-resident sellers in other states. Seagram furnishes some of its brands from a warehouse in Oklahoma City, and Heublein products are sold from shipping points in Michigan and California. Products destined for the Oklahoma wholesalers' out-of-state customers are either filled from inventory in the wholesaler's warehouse or sent by direct shipment. Prior to March 5, 1981, 75–80% of Metro's out-of-state business was handled by direct shipment. Central also used direct shipment to conduct a substantial portion of its out-of-state business.

The legality of the out-of-state shipments was challenged, and Richard Crisp, the Director of the Oklahoma Alcoholic Beverage Control Board (ABC Board), sought an Attorney General's Opinion. The Attorney General held in Op.Atty.Gen. No. 81–57 (March 5, 1981) that neither the forced sale clause of the Okla.Const. art. 27, § 3 [1] and 37 O.S.1971 § 533,[2] nor the price affirma-

1. The Okla.Const. art. 27, § 3 provides:
   "The Legislature shall enact laws providing for the strict regulation, control, licensing, and taxation of the manufacture, sale, distribution, possession, and transportation of alcoholic beverage, consistent with the provisions of this Amendment. Provided that any manufacturer, or subsidiary of any manufacturer who markets his product solely through a subsidiary or subsidiaries, a distiller, rectifier, bottler, winemaker, brewer, or importer of alcoholic beverage, bottled or made in a foreign country, either within or without this state, shall be required to sell such brands or kinds of alcoholic beverages to every licensed wholesale distributor who desires to purchase the same, on the same price basis and without discrimination, and shall further be required to sell such beverages only to those distributors licensed as wholesale distribu-tors, and all laws passed by the Legislature under the authority of the Article shall be consistent with this provision."

2. It is provided by 37 O.S.1971 § 533:
   "Any manufacturer or subsidiary of a manufacturer who markets his or its products solely through a subsidiary or subsidiaries, a distiller, rectifier, bottler, winemaker, brewer, or importer of alcoholic beverages, bottled or made in a foreign country, either within or without this State, shall be required to sell such brands or kinds of alcoholic beverages to every licensed wholesaler or Class B wholesaler who desires to purchase the same, on the same price basis and without discrimination or inducements, and shall further be required to sell such beverages only to those persons licensed as wholesalers or Class B wholesalers.

tion statute, 37 O.S.1971 § 536.1,[3] required non-resident sellers to sell to Oklahoma wholesalers at the lowest price charged for that spirit anywhere in the United States if it were for consumption outside the state; nor was it required that non-resident sellers fill the entire quantity of each order submitted by an Oklahoma wholesaler if the product were intended for use, distribution or consumption outside the state.

Following the issuance of the Attorney General's Opinion, Central began routing all goods through its Oklahoma warehouse before transporting them to out-of-state customers. The ABC Board implemented the Attorney General's Opinion by permitting non-resident sellers to request information from each Oklahoma wholesaler concerning the amount of each purchase order to be distributed in Oklahoma. Central sought declaratory and injunctive relief, challenging the Attorney General's Opinion, and seeking to prevent the ABC Board's enforcement of the Opinion. Seagram, Heublein and Metro were permitted to intervene.

At the trial on the merits, the district court vacated the Attorney General's Opinion; enjoined the ABC Board from enforcing the Opinion or from the implementation of any procedures to determine the ultimate destination of wines or spirits shipped to Oklahoma wholesalers; determined that every non-resident seller is required to supply each Oklahoma wholesaler every alcoholic beverage ordered at the lowest price charged anywhere in the United States, regardless of the destination of the product; and held, pursuant to 37 O.S.Supp. 1978 § 521(e),[4] Oklahoma wholesalers were permitted to sell unlimited quantities of wine and spirits at Oklahoma prices to out-of-state customers.

Although several questions are urged on appeal, the dispositive issue is whether the trial court's conclusion, that every non-resident seller is required to supply each Oklahoma wholesaler every alcoholic beverage ordered at the lowest price charged anywhere in the United States, is warranted by the Oklahoma Constitution and Oklahoma Alcoholic Beverage Control Act, 37 O.S.1971 § 502, et seq.

■■■ The fundamental rule of statutory construction is to ascertain, and, if possible, give effect to the intention and purpose of the Legislature as expressed in the statute.[5] The Act does not provide any basis for the requirement that non-resident sellers of intoxicants sell unlimited quantities of alcoholic beverages for resale in other states at prices controlled by § 533.1. Rather, the Act reflects that the Legislature intended to make available intoxicating beverages under a variety of controls for the people of Oklahoma for use within the State of Oklahoma. Title 37 O.S.1971 § 503,[6] provides that it is an exercise of the state police power for the protection of the welfare,

"No manufacturer shall require a wholesaler or Class B wholesaler to purchase any alcoholic beverages or any goods, wares or merchandise as a condition to the wholesaler or Class B wholesaler obtaining or being entitled to purchase any alcoholic beverages.

"Violation of this Section shall be a misdemeanor. Conviction hereunder shall automatically revoke the violator's license."

**3.** 37 O.S.1971 § 536.1 provides:

"No distiller shall sell alcoholic beverages to a wholesaler licensed under the Alcoholic Beverage Control Act at a rate higher than the lowest rate at which such distiller sells in any other state."

**4.** It is provided by 37 O.S.Supp. 1978 § 521(e) in pertinent part:

"A wholesaler's license shall authorize the holder thereof . . . to sell wine and spirits out of this state to qualified persons."

**5.** *Oklahoma Alcoholic Beverage Control Bd. v. Central Liquor Co.*, 421 P.2d 244, 248 (Okl. 1966).

**6.** It is provided by 37 O.S.1971 § 503:

"This Act shall be deemed an exercise of the police power of the State of Oklahoma for the protection of the welfare, health, peace, temperance and safety of the people of the State, and all the provisions hereof shall be construed for the accomplishment of that purpose."

health, peace and safety of the people of the state. The ballot title repealing prohibition stated, "Shall a constitutional amendment repealing the Prohibition Ordinance and ... providing for regulations and restrictions on the manufacture, sale, distribution and taxation of alcoholic liquor in the State of Oklahoma be approved by the people?"[7] The requirement that non-resident manufacturers sell unlimited quantities on demand by Oklahoma wholesalers for the purpose of resale for ultimate consumption in other states is unrelated to the legislative intent to protect the welfare, health, safety, peace and temperance of the citizens of this state. The police power must be exercised in the public interest with scrupulous concern for private rights guaranteed by the Constitution. It may not be utilized for the benefit of a private company.[8] The interests of the people of this state can scarcely be served by shipments of alcoholic beverages destined for consumption in another state. It is apparent that the Oklahoma Legislature did not intend the unlimited supply and affirmation price controls to apply to sales in other states. Neither the ABC Act nor the Constitutional Amendment reflects an intent either to regulate or force sales outside the State of Oklahoma.

We find that the trial court's interpretation of the forced sale and price affirmation clauses is not compelled by the language, purpose or legislative intent of the statutes. The only provision of the Act or the Constitution which authorizes out-of-state sales is 37 O.S.Supp. 1978 § 521(e).[9] This statutory provision is not mandated by the Constitution. The statute is permissive, and nothing is contained therein or in the ABC Act concerning any obligation by a non-resident seller to supply unlimited quantities of intoxicants at a state mandated price when the goods are destined for consumption in other states.

Oklahoma may regulate liquor sales between non-resident sellers and Oklahoma wholesalers when such transactions involve liquor destined for Oklahoma. When liquor is not destined for use, distribution, or consumption in Oklahoma, this State has no jurisdiction, authority, or legitimate state interest in the regulation of transactions. The matter then becomes one of contract between the non-resident seller and the Oklahoma wholesaler insofar as Oklahoma law is concerned. If the non-resident seller wishes to sell to an Oklahoma wholesaler with the knowledge that the product is to be resold outside of Oklahoma, that is the prerogative of the non-resident seller. Likewise, if the non-resident seller does not desire to enter into such a transaction, that is also its prerogative. A non-resident seller is subject to Oklahoma law insofar as alcoholic beverage destined for use, distribution or consumption within this state is concerned, and a non-resident seller must sell alcoholic beverage destined for use, distribution, or consumption in Oklahoma to all Oklahoma wholesalers on an equal price basis and without discrimination.

REVERSED.

IRWIN, C. J., BARNES, V.C.J., LAVENDER, SIMMS and OPALA, JJ., CORNISH and BRETT, Special Justices, concur.

HARGRAVE, J., dissents.

CORNISH, Special Justice, sitting in Court's Vacancy.

BRETT, Special Justice, sitting in place of DOOLIN, J., who disqualified.

**7.** A ballot title is a contemporaneous construction of a constitutional amendment and as such weighs heavily in determining its meaning. *Austin Nichols & Co. v. Okl. Cty. Bd. of Tax-Roll Corrections,* 578 P.2d 1200, 1203 (Okl. 1978).

**8.** *Oklahoma Natural Gas v. Choctaw Gas Co.,* 205 Okl. 255, 261, 236 P.2d 970, 977 (1951).

**9.** See note 4, supra.