STATE of Oklahoma, ex rel. Jan Eric CARTWRIGHT, Attorney General thereof, Appellant,

v.

OKLAHOMA TAX COMMISSION, composed of Odie Nance, Chairman, Robert L. Wadley, Vice Chairman, and J.L. Merrill, Secretary-Member, Stuart S. Carey d/b/a Metro Beverage Company, Pioneer Wholesale Liquor Distributors, a partnership, Central Liquor Company, a partnership, and Jarboe Sales Company, a partnership, Appellees.

No. 57671.

Supreme Court of Oklahoma.

Nov. 2, 1982.

As Corrected Dec. 6, 1982.

Jan Eric Cartwright, Atty. Gen., Gary W. Gardenhire, Michael C. Conaway, Asst. Attys. Gen., Oklahoma City, for appellant, State of Okl.

Marjorie Patmon, Gen. Counsel, Oklahoma Tax Com'n, Oklahoma City, for appellee, Oklahoma Tax Com'n.

Stephen P. Friot, Spradling, Stagner, Alpern & Friot, Oklahoma City, for intervenor, Stuart S. Carey, d/b/a Metro Beverage Co., appellee.

Jeff L. Hartmann, Shdeed & Hartmann, Oklahoma City, for intervenor, Central Liquor Co., appellee.

Arnold Fagin, Fagin, Hewett, Mathews & Fagin, Oklahoma City, for intervenor, Pioneer Wholesale Liquor Distributors, appellee.

John B. Jarboe, Jarboe & Thompson, Tulsa, for intervenor, Jarboe Sales Co., appellee.

HARGRAVE, Justice.

This action was brought by the Oklahoma Attorney General against the Oklahoma Tax Commission (1) to enjoin the Commission from refunding excise tax on sales of alcoholic beverages made by Oklahoma liquor wholesalers to out-of-state purchasers; (2) to have the Tax Commission's administrative rules authorizing the tax refunds declared unlawful and void; (3) to have all sales of alcoholic beverages to out-of-state purchasers declared to be subject to excise tax imposed by Oklahoma law; (4) and for relief in the nature of a Writ of Mandamus commanding the Commission to recover all excise taxes improperly refunded. Four liquor wholesalers intervened. The Attorney General asked for a temporary restraining order during the pendency of this litigation.

At an earlier stage in this proceeding, the trial court ruled that the Attorney General had standing to bring this action, but summarily denied the injunctive relief and adjudicated the case *sua sponte*. After much procedural advocacy, not pertinent to this appeal, that order was vacated. A second hearing was set and discovery was begun. The Tax Commission refused to answer certain questions, claiming privilege under 68 O.S.1981, § 205. The Attorney General moved to compel, with the trial court denying the motion, ruling that the information sought was privileged and irrelevant.

At the second hearing, on the issues of the Attorney General's standing and the issuance of the temporary injunction, the trial court held: (1) that the Attorney General lacked standing to bring the suit; (2) that an excise tax on sales of alcoholic beverages levied against out-of-state buyers from Oklahoma wholesalers was an unwarranted burden on interstate commerce; (3) that the Attorney General could not prevail on the merits since his propositions lacked "even colorable merit"; (4) therefore, the case was dismissed; (5) that the temporary injunction was denied; and (6) the temporary restraining order was dissolved within five days.

The Attorney General appealed.

At issue in this case is: (1) whether the "direct" out-of-state sales in which the alco-

holic beverages are never physically present in the State are legal under the statutes; this issue has been resolved in the case of *Central Liquor v. Oklahoma Alcoholic Beverage Control Board,* 640 P.2d 1351 (Okl. 1982); (2) whether the Oklahoma Tax Commission's current policy of refunding the taxes paid on said out-of-state sales of liquor is legal; (3) whether the refunded taxes are recoverable if they were illegally rebated; (4) whether out-of-state sales of liquor by Oklahoma wholesalers when the beverages are physically present in the state at resale are excluded from excise tax by provisions of Oklahoma legislation; (5) whether the out-of-state sales are excluded from Oklahoma taxation because of the interstate commerce clause and due process; (6) whether the Attorney General of the State of Oklahoma has standing to bring suit to halt the refund of taxes on out-of-state liquor sales by Oklahoma wholesalers; (7) whether the Attorney General was improperly denied discovery by the Oklahoma Tax Commission with regard to the records of out-of-state sales and tax rebates; and (8) whether the trial court's decision is contrary to the law and the evidence.

## I—DOES THE ATTORNEY GENERAL OF OKLAHOMA HAVE STANDING TO BRING AN ACTION AGAINST THE OKLAHOMA TAX COMMISSION FOR INJUNCTIVE OR DECLARATORY RELIEF?

■ The Oklahoma Tax Commission and various intervening liquor distributors contend that Oklahoma's Attorney General lacks standing to bring this cause of action. "Standing" is the legal right of a person to challenge the conduct of another in a judicial forum. "When standing is placed in issue in a case, the question is whether the person whose standing is challenged, is a proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable." *Flast v. Cohen,* 392 U.S. 83, 99–100, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947, 961 (1968). Stated another

way, "Standing" is the right to commence litigation, to take the initial step that frames legal issues for ultimate adjudication by a court or jury.

■ We hold that the Attorney General has the legal standing to bring this action under statutory authority. *First,* the Oklahoma Constitution reads in pertinent part:

"A. The Executive authority of the state shall be vested in a Governor, Lieutenant Governor, Secretary of State, State Auditor and Inspector, *Attorney General,* [others omitted] ... each of whom shall keep his office and public records, books and papers at the seat of government, *and shall perform such duties as may be designated in this Constitution or prescribed by law.*" (Emphasis added)

Okla. Const. Art. 6, § 1(A). *Second,* the statutory duties "prescribed by law" are found in 74 O.S.1971, § 18, and 74 O.S.1982 Supp., § 18b. Section 18 reads *in toto:*

"The Attorney General shall be the Chief Law Officer of the State."

Section 18b reads in pertinent part:

"The *duties* of the Attorney General as the Chief Law Officer of the state *shall be:*

\*  \*  \*  \*  \*  \*

"(p) To institute *civil actions* against members of *any state board or commission* for failure of such members to perform their duties *as prescribed by the Statutes and the Constitution....*" (Emphasis added)

It is uncontroverted that the action below is a "civil action," see 12 O.S.1971 §§ 4 and 6, and that it was initiated against members of a State Commission for failure to perform a statutory duty.

Specifically, the subject of the Attorney General's challenge is (1) the alleged failure of the appointed members of the Oklahoma Tax Commission to retain proper custody of monies collected and lawfully owed as State taxes from the sale of liquor by Oklahoma

wholesalers to out-of-state purchasers, and (2) the refunding of said monies to said licensed Oklahoma liquor wholesalers who purchased liquor pursuant to their Oklahoma licenses and resold it to out-of-state purchasers, allegedly in violation of Okla. Const., Art. 27, § 7(a); 37 O.S. 1981, § 553(b).

With regard to the Attorney General's source of statutory authority, it is axiomatic that persons expressly authorized by statute to bring an action have legal standing to do so. *State ex rel. Murray, for Use and Benefit of Sapulpa State Bank v. Pure Oil Co.,* 169 Okl. 507, 37 P.2d 608 (1934).

## II—TAXABLE STATUS OF OUT–OF–STATE SALES MADE BY OKLAHOMA WHOLESALERS.

█ The citizens of the State of Oklahoma repealed state prohibition by their approval of Article 27 of the Oklahoma Constitution April 7, 1959.

The face of the third section of Article 27 provides two points from which this Court is required to view this litigation by clearly stating therein:

"The legislature shall enact laws providing for the strict regulation, control, licensing and taxation of the manufacture, sale, distribution, possession and transportation of alcoholic beverages.

\*　　\*　　\*　　\*　　\*　　\*

. . . and all laws passed by the legislature under the authority of the article shall be consistent with this provision."

This Court cannot, consonant with any rule of constitutional interpretation, ignore the plainly stated intent of such a clear and unambiguous provision of organic law of this state. The people require, and are entitled to, strict regulation and taxation of the liquor trade and the legislature is required to pass laws in conformity with this mandate.

Under the constitution, the contention of all parties that there is no mandate to strictly regulate taxation, use, importation or sale of alcoholic beverages must be disapproved, and the inquiry then becomes one of determination of conformity with these mandates.

The sales of spirits here at issue were made, as the record clearly shows, at the "affirmation price" to a wholesaler licensed under the act. Wholesaler is defined by referral to those persons engaging in the acts defined in 37 O.S.1971 § 521(e):

"(e) A wholesaler's license shall authorize the holder thereof: to purchase and import into this state spirits and wines from persons authorized to sell same who are the holders of a nonresident seller's license and their agents who are the holders of manufacturers agent's licenses; to purchase spirits and wines from licensed distillers, rectifiers, winemakers and wholesalers in this state; to sell spirits and wines in retail containers in this state to retailers; to sell spirits and wines to wholesalers authorized to sell same; and to sell spirits and wines out of this state to qualified persons. Wholesalers shall be authorized to place such signs outside their place of business as are required by Acts of Congress and by such laws and regulations promulgated under such Acts.

"A wholesaler's license shall authorize the holder thereof to operate a single bonded warehouse with a single central office together with delivery facilities at a location in this state only at the principal place of business for which the wholesaler's license was granted."

Thus a wholesaler may "purchase and import into this state spirits . . . and sell spirits and wines out of this state to qualified persons." Appellees have relied upon their status as Oklahoma wholesalers to bring the force of the lowest state price statute to bear upon their suppliers.

The people of the State of Oklahoma mandated that any distiller selling alcoholic beverages in Oklahoma must sell to all wholesalers that are desirous of purchasing at the same price basis without discrimina-

tion by passage of Section 3 of Article 27 of the Oklahoma Constitution in 1959. The legislature further mandated that those distillers must sell to Oklahoma liquor wholesalers at the lowest price at which the distiller sells to any other state in the nation by the enactment of 37 O.S.1971 § 536.1. Oklahoma wholesalers have found a profit to be acquired through their occupation under the aegis of the above two provisions of Oklahoma law. The wholesaler places an order with an out-of-state distiller for an order of spirits to be shipped to a sister state. Substantial portions of these transactions involve no shipment into this jurisdiction. Oklahoma presently requires distillers to pay excise tax on every sale to an Oklahoma wholesaler, 37 O.S.1981 § 553(b)(1). The Oklahoma wholesaler then applies to the Oklahoma Tax Commission for a refund of those excise taxes under current Tax Commission Regulation No. XXX–2(6) which provides:

> " 'Taxable Sales' shall mean all sales of alcoholic beverages, except beer, by any licensed distributor to a licensed wholesaler whether such sales are consummated within or without this state. All such sales shall be presumed to be sales of such product for distribution, use or possession within the state of Oklahoma, and the burden of proof shall be on the licensed wholesaler to prove otherwise."

The Tax Commission contends that the authority to provide refunds of excise tax on out-of-state sales is now found in 37 O.S. Supp.1980 § 541, effective January 1, 1981:

> "The Tax Commission shall have authority to allow credit for or make refunds of any money paid for stamps issued by the Oklahoma Tax Commission in payment of state tax by the manufacturer pursuant to authority granted by the Tax Commission. All applications to the Tax Commission for credit or replacement under the provisions of this section shall be verified by affidavit and all proof and evidence supporting such applications shall be made in strict conformity with

the rules and regulations of the Tax Commission setting forth the requirements in connection with such evidence and application."

Under the authority of § 541, *id.* as interpreted by the Tax Commission regulation, the wholesaler claims a refund on out-of-state sales and the Tax Commission processes and handles administrative details of the transaction.

The current § 541, *supra,* does not except out-of-state sales from taxation. However, a reading of 37 O.S.Supp.1980 § 553 discloses a tax is levied on, among other things, alcoholic beverages for sale or used or possessed in this state:

> "An excise tax is hereby levied and imposed upon all alcoholic beverages imported or manufactured for sale, use, or distribution, or used or possessed *in this state. . . ."* (Emphasis added.)

Under the Constitution of Oklahoma, Art. 27 § 3, the legislature has the power to tax the manufacture, distribution, possession and transportation of alcoholic beverages. Under 37 O.S.Supp.1980 § 553 and 37 O.S. 1971 § 562, the Legislature has levied an excise tax upon the consumption of beverages within this state. Title 37 O.S.1971 § 562 provides:

> "The excise tax levied by this Act is hereby declared and intended to be a direct tax upon the ultimate retail consumer of alcoholic beverages *in this state,* and when such tax is paid by, or collected from, any other person, as herein provided for, such payment shall be considered as an advance payment for convenience and facility only, and such tax shall thereafter be added to the price of such alcoholic beverages and recovered from the ultimate retail consumer thereof." (Emphasis added.)

After determining that 37 O.S.1971 § 553 and § 562 excludes out-of-state sales from the excise tax, there remains no inquiry into the existence of an exemption from taxation, because exemption from taxation presupposes the transaction is, in the first instance, taxable.

Therefore, when a liquor wholesaler, licensed by the State of Oklahoma, sells liquor under the auspices of that Oklahoma license to either an out-of-state retail consumer, or an out-of-state retailer, or even another out-of-state wholesaler, the liquor and its sale are not subject to taxation under Oklahoma law.

We therefore hold that the Tax Commission may legally refund taxes on alcoholic beverages. The Commission's regulations providing for such rebates are in accord with the statutes, and the Attorney General of Oklahoma has standing to bring this action.

## III—DID THE TRIAL COURT ERR IN DENYING ATTORNEY GENERAL'S MOTION TO COMPEL DISCOVERY.

The Attorney General deposed one of the Directors of Alcohol and Cigarette Tax Division of the Oklahoma Tax Commission to discover statistics as to gross amounts of tax refunds made rather than specific information contained in individual taxpayers' returns. The witness refused to answer certain questions, claiming privilege, pursuant to 68 O.S.1981, § 205. The appellant made a motion to compel, but the trial court refused to order the witness to answer, ruling that the information was both privileged and irrelevant.

Title 68 O.S.1981, § 205, reads in pertinent part:

"(b) Neither the Tax Commission nor any employee engaged in such administration or charged with the custody of any such records or files shall be required by any court of this state to produce any of them for the inspection of any person or for use in any action or proceeding *except when the records or files or the facts shown thereby are directly involved in an action or proceeding under the provisions of this article, or of the state tax law affected, or when the determination of the action or proceeding* will affect the validity or the amount of the *claim of the state under any state tax law, or when the information contained therein constitutes evidence of the violation of this article, or any state tax law.* Nothing herein contained shall be construed to prevent:

\*    \*    \*    \*    \*    \*

"(4) The disclosing of *information* or evidence to the Attorney General or any district attorney when such information or evidence is to be used by such officials to prosecute violations of the criminal provisions *of any state tax law or of this article.* Such information disclosed to the Attorney General or any district attorney shall be kept confidential by them and not be disclosed except when presented to a court in a prosecution for violation of the tax laws of the State of Oklahoma and a violation by them by otherwise releasing the information shall be a felony;

\*    \*    \*    \*    \*    \*

"It is further provided that the provisions of this act shall be strictly interpreted..." (Emphasis added).

Under this statute, and our holdings in *Oklahoma Tax Commission v. Daxon,* 607 P.2d 683 (Okla.1980), and *Oklahoma Tax Commission v. Clendinning,* 193 Okl. 271, 143 P.2d 143 (1951), the Attorney General would have been authorized to make the inquiries here questioned. Our determination here made that these out of state sales are not taxable renders that inquiry moot, however.

The Attorney General clearly had standing to bring this action, but is not entitled to the relief sought. Our holding has obviated the necessity of discussing other issues raised by the parties. The order of the trial court dissolving the temporary restraining order is in accord with the law and the evidence and is, therefore, affirmed.

AFFIRMED.

BARNES, V.C.J., LAVENDER, SIMMS and OPALA, JJ., and BRETT and CORNISH, S.JJ., concur.

IRWIN, C.J., and HODGES, J., dissent.

(BRETT, S.J., sitting in place of DOOLIN, J., who disqualified. CORNISH, S.J., sitting in vacancy.)

IRWIN, Chief Justice, dissenting:

37 O.S.1981, § 553(a) provides that "an excise tax is hereby levied and imposed upon all alcoholic beverages imported or manufactured, for sale, use or distribution, or used or possessed in this state."

I construe § 553(a) as imposing an excise tax upon all alcoholic beverages sold in this state.

All of the sales in the case at bar were made *only* under the authority of licenses issued by the State of Oklahoma. There is no contention whatsoever that sellers were acting under any other authority or could have consummated the sales herein involved without their Oklahoma licenses. Therefore, all the sales in the case at bar must constitute sales in this state.

37 O.S.1981, § 554 prescribes the exemptions from the excise tax imposed by § 553(a) supra. The "sales" in the case at bar are not exempted by § 554.

37 O.S.1981, § 562 provides that the excise tax levied by § 553 is declared and intended to be a direct tax upon the ultimate retail consumer of alcoholic beverages in this State.

Although the ultimate retail consumer does pay the excise tax to the retail dealer at the time of purchase, the retail dealer is not liable for the tax to the state. The responsibility and liability for paying the excise tax is upon the person shipping the alcoholic beverage into Oklahoma, or in the case of direct imports from foreign countries by the importer, or in the case of alcoholic beverages manufactured in Oklahoma by the first seller. 37 O.S.1981, § 553(b)(1). When the Legislature enacted § 562, supra, and declared its intention that the excise tax be upon the ultimate consumer in this State, the Legislature recognized, and no one would suggest otherwise, that Oklahoma could not impose an excise tax upon a retail consumer where the retail consumer purchased his alcoholic beverages beyond the Oklahoma boundaries. The mere declaration of intention that the excise tax be upon the ultimate consumer in this state does not grant an exemption to the excise tax specifically levied on all sales in this state by 37 O.S.1981, § 553(a) to out-of-state purchasers.

The sellers who sold to out-of-state purchasers are licensed in Oklahoma; their entire authority to sell alcoholic beverages to in-state or out-of-state purchasers is granted by the State of Oklahoma; their right to sell and do business is protected by the State of Oklahoma; and a sale to an Oklahoma purchaser is taxable. In my opinion the Legislature followed Article XXVII, § 3 of the Constitution which mandates that the Legislature shall enact laws providing for the strict regulation, control and taxation and sale of alcoholic beverages and made no distinction between a sale of alcoholic beverages to an in-state or an out-of-state purchaser in the imposition of an excise tax.

I respectfully dissent.

I am authorized to state that Justice HODGES joins me in this dissent.